HARRIS *v.* SMITH.

Opinion delivered March 25, 1918.

1. PLEADING AND PRACTICE—EFFECT OF FILING ANSWER—JURISDICTION. —Where defendant filed an answer in an action against him, thereby entering his appearance, he can not complain on appeal that he was not properly sued in the county where the suit was brought.

2. EQUITY JURISDICTION—LOCAL ACTION—LOCATION OF LANDS.—All actions brought under Kirby's Digest, § 6060, must be brought in the county where the lands are situated, that is, actions for the recovery of real property or an interest therein, for the partition of land, for its sale under mortgage or other encumbrance, or for an injury to real property.

3. ACTIONS—LAND—LOCAL ACTION.—If the purpose of a bill and the effect of a decree are to reach and operate upon land, the action is regarded as a proceeding *in rem,* and under Kirby's Digest,

§ 6060, is a local action, and must be brought in the county where the land is situated.

4. ACTIONS—TO RECOVER AND FIX A LIEN UPON LAND—BROUGHT WHERE.—An action to recover certain lands, conveyed away, and to declare and enforce judgment liens against the same, is local and not transitory, and must be brought in the county where the lands are situated.

5. FRAUDULENT CONVEYANCE—SUFFICIENCY OF ALLEGATIONS.—The allegations held sufficient to include a charge of the fraudulent conveyance of certain personal property.

6. FRAUDULENT CONVEYANCES—EMBARRASSED DEBTOR.—A conveyance of an embarrassed debtor of all his assets to relatives, friends, and a corporation of his own creating, held to be fraudulent.

Appeal from Sebastian Chancery Court, Fort Smith District; *W. A. Falconer,* Chancellor; reversed in part, affirmed in part.

*Winchester & Martin,* for appellant.

1. There was no evidence to sustain the allegations of the bill. No judgment against Harris was shown or offered in evidence. One not a creditor is in no position to ask that a conveyance be set aside. 58 Ark. 186; 34 *Id.* 291.

2. No fraud was proven. 50 Ark. 289; 64 *Id.* 505. Nor was there proof of insolvency. 68 *Id.* 162.

3. The court had no jurisdiction of lands in Polk County. Kirby's Dig., § § 1284, 1305, 6060; 85 Va. 1; 33 Ark. 31, 33; 18 How. 263; 20 Tex. 334; 55 Ark. 454; 70 *Id.* 347; 16 Fla. 708; 43 Pac. 535.

4. There was no jurisdiction of the subject matter. 48 Ark. 156.

4. Smith failed to prove his judgment.

*Warner & Warner,* for appellee.

1. The general rule applicable to cases like this is clearly stated in 73 Ark. 174. 58 Ark. 162 is conclusive of the questions. See also 50 Ark. 289. The transfers constituted fraud. 72 Ark. 58; 74 *Id.* 186; 50 *Id.* 289.

2. The Ward transaction was fraudulent. 50 Ark. 314; 107 *Id.* 581; 55 *Id.* 579; 30 *Id.* 421.

3. The transfer to the Wyss Lumber Company was also fraudulent as was the deed to Caesar Wyss.

4. The court had jurisdiction and the injunction properly ordered. 12 R. C. L., § 129. See also 20 Cyc. 389; 52 Ark. 458; 14 *Id.* 345; 17 *Id.* 340; 18 *Id.* 583; 49 *Id.* 318; Kirby's Digest, § 6060; 97 N. W. 574; 30 S. E. 242; 33 S. W. 466; 20 Cyc. 710; 34 Ark. 410; 99 *Id.* 438. The court properly canceled the conveyances to the Wyss Lumber Company and Caesar Wyss.

HUMPHREYS, J. Gilbert A. Smith obtained judgment against R. P. Harris for $234.17, on the 23d day of June, 1915, in the chancery court for the Fort Smith District of Sebastian County. On July 16, 1915, the Arkansas Valley Trust Company purchased the business and assets of the Fort Smith Bank & Trust Company, and one of the assets was a balance of $6,419.80, due upon a judgment which the Fort Smith Bank & Trust Company obtained against R. P. Harris in the Sebastian Chancery Court for the Fort Smith District, on the 15th day of April, 1915. On account of the insolvency of R. P. Harris, Gilbert A. Smith instituted a suit in the Sebastian Chancery Court for the Fort Smith District to set aside as fraudulent the conveyance of certain real estate in Sebastian County by R. P. Harris and Lula Harris, his wife, to J. N. Ward, of date February 11, 1915, and the conveyances of certain real estate in Polk County by R. P. Harris to Caesar Wyss, of date May 29, 1915, and to Wyss Lumber & Trading Company, of date May 15, 1915; and to impound moneys deposited in the City National Bank of Fort Smith, in the names of Wyss Lumber & Trading Company and Lula Harris, as the property of R. P. Harris, for the purpose of subjecting the real estate and moneys to the payment of his judgment. R. P. Harris, Lula Harris, City National Bank, Wyss Lumber & Trading Company and J. N. Ward were made parties defendant in the suit. The Arkansas Valley Trust Company joined in the suit by intervention. It adopted *in toto* the allegations of fraud in Gilbert A. Smith's bill and prayed

that the said conveyances of real estate in both counties be set aside, and, in addition thereto, alleged that Wyss Lumber & Trading Company was organized by R. P. Harris and Caesar Wyss and Minor Pipkin for the purpose of fraudulently taking over and holding without consideration the Eagleton mill and lumber plant and the property used in connection with the operation of same, which was purchased by R. P. Harris with money borrowed from the Fort Smith Bank & Trust Company, for which it later sued and obtained the judgment which is the basis of this intervention. The intervener not only sought to cancel as fraudulent the real estate conveyances in both counties and to subject said real estate to the payment of its judgment, but to cancel, as fraudulent, all transfers of personal property by R. P. Harris to Wyss Lumber & Trading Company and to subject said personal property to the payment of its judgment, also; and for that purpose made Caesar Wyss and Minor Pipkin parties defendant. Caesar Wyss and Minor Pipkin, although properly served with process, did not appear or answer. R. P. Harris, Lula Harris, Wyss Lumber & Trading Company and J. N. Ward filed separate answers, denying the material allegations of the bill and intervention; and the City National Bank answered that there was on deposit in its bank $4.20 in the name of R. P. Harris and $211.99 in the name of Wyss Lumber & Trading Company.

The cause was heard upon the pleadings, oral, written and documentary evidence, separate demurrers of R. P. Harris, Wyss Lumber & Trading Company and J. N. Ward, to appellee's evidence, and a plea by R. P. Harris and Wyss Lumber & Trading Company to the jurisdiction of the court, filed when appellees closed their case. The court overruled the several demurrers to the evidence which raised the question of the sufficiency of appellee's evidence to sustain the allegations of fraud in the bill, and overruled the plea to the jurisdiction of the court which raised the question of whether a suit could be maintained in Sebastian County to cancel conveyances of land located in Polk County; and, upon the whole case, found that the

Sebastian County lands were conveyed to J. N. Ward by R. P. Harris and Lula Harris, his wife, for $9,300, and that J. N. Ward was a *bona fide* purchaser thereof for value; that the conveyances of the Polk County lands by R. P. Harris and Lula Harris, his wife, to Caesar Wyss and the Wyss Lumber & Trading Company, and the bill of sale of the stock of goods, wares and merchandise of the value of $1,500, from R. P. Harris to the Wyss Lumber & Trading Company, were all without consideration and made by an embarrassed debtor for the purpose of hindering, delaying and defrauding appellees and other creditors in the collection of their claims, and also found that the moneys deposited in the City National Bank in the name of Wyss Lumber & Trading Company belonged to R. P. Harris. A judgment was rendered in keeping with the findings, from which an appeal has been prosecuted to this court by all the defendants in the lower court, except J. N. Ward. The suit by appellees against J. N. Ward has not been appealed from by either party. The cause, therefore, is before us for trial *de novo,* in so far as the findings and decree of the chancellor were adverse to appellants; and to the refusal of the chancellor to make any finding or order relative to horses, mules, wagons and harness transferred by Harris to Wyss Lumber & Trading Company.

Appellees do not insist in their argument upon the exceptions saved to the refusal of the court to make any finding or order relative to the horses, mules, wagons and harness transferred by Harris to Wyss Lumber & Trading Company, so we regard and treat the appeal of appellees as abandoned.

(1) It is insisted by appellants that the Wyss Lumber & Trading Company was not properly sued in Sebastian County. This objection is not tenable for it filed an answer and thereby entered its appearance.

(2) It is insisted by appellants that the court, sitting in Sebastian County, had no jurisdiction to cancel deeds to lands in Polk County and subject them to the payment of appellees' claims. The first and third sub-

divisions of section 6060 of Kirby's Digest provide that suits "for the recovery of real property or an interest therein, or for the sale of real property under a mortgage, lien or other incumbrance," must be brought in the county where the subject matter of the action, or some part thereof, is situated. Appellees insist that because the suit was brought in Sebastian County, where part of the lands were situated, under the plain language of section 6060 of Kirby's Digest, the Sebastian County Chancery Court acquired jurisdiction over the Polk County lands. The construction placed upon the statute by appellees would be forceful if applied to a case where all the lands, though lying in different counties, were involved in litigation between the same parties, but certainly can not be true when applied to a case where the lands not only lie in different counties but also involve different parties defendant. In the instant case, neither Caesar Wyss nor the Wyss Lumber & Trading Company, grantees in the conveyances of the Polk County lands, had any interest whatever in the Sebastian County lands; nor did J. N. Ward, the grantee of the Sebastian County lands, have any interest in the Polk County lands. The conveyances were separate and distinct conveyances of lands in different counties to different parties. There was no connection whatever between the transactions or conveyances. The validity of one was not dependent upon the other. The causes of action are as separate and distinct as the transactions or conveyances, and pertain to lands in different counties. For that reason, the lands in the different counties can not be regarded as parts of the same subject matter and the same cause of action. Nor will the equities, if any, which existed in favor of appellees against Ward, in relation to the Sebastian County lands, draw issues between appellees and Caesar Wyss or Wyss Lumber & Trading Company, concerning the lands in Polk County, into the suit just because independent causes of action were improperly joined in the same suit. The doctrine that chancery courts will do complete justice when they assume jurisdiction for one purpose, or when

they assume jurisdiction for one purpose they take it for all purposes, can not be extended to different causes of action between different parties, involving the recovery of lands or the enforcement of liens thereon in different counties. If, therefore, the Sebastian Chancery Court for the Fort Smith District had jurisdiction over the lands in Polk County, it must be upon the theory that the subject matter of the litigation was not within the control of section 6060 of Kirby's Digest. In other words, that the action was transitory and not local. Section 6060 of Kirby's Digest contains four subdivisions, and all actions coming within either subdivision are local and must be brought in the county where the lands are situated. The subdivisions are as follows:

"*First.* For the recovery of real property, or of an estate or interest therein.

"*Second.* For the partition of real property.

"*Third.* For the sale of real property under a mortgage, lien or other incumbrance or charge.

"*Fourth.* For an injury to real property."

In construing the statute, this court held in the case of *Jacks et al.* v. *Moore,* 33 Ark. 31, that an action for damages on account of a trespass on lands in Lee County was made local by the statute and must be brought in Lee County, and that the circuit court of Phillips County had no jurisdiction over the subject matter. And, again, in the case of *Cox* v. *Railway Company,* 55 Ark. 454, held that an injunction suit to restrain appellee from removing earth from appellant's land was an injury to property and a local action within the section of the statute under consideration. In rendering the latter opinion, Justice MANSFIELD said: "It was argued that as the remedy by injunction acts only on the person of the defendant, the venue is transitory. But so also an injunction to stay proceedings on a judgment operates only upon the person of the proper party; and yet it must issue in an action brought in the court where the judgment was rendered. Mansf. Dig., § 3751. And so, too, the recovery of damages for a trespass on land is of course by a judgment

strictly personal; but the action for it must be brought in the county where the land or some part of it is situated.''

(3) It seems to be well settled that if the purpose of the bill and the effect of the decree are to reach and operate upon the land itself, then it is regarded as a proceeding *in rem,* and, under the statute in question, is a local action and must be brought in the county where the land is situated. *Jones, McDowell & Co.* v. *Fletcher,* 42 Ark. 422; *McLaughlin* v. *McCrory,* 55 Ark. 442.

(4) The court is of the opinion that the purpose of this bill was to recover the lands in Polk County, which Harris had conveyed to Caesar Wyss and the Wyss Lumber & Trading Company, and to declare and enforce judgment liens against same, and that the action was local, and not transitory, and should have been brought in Polk County instead of Sebastian County.

It is insisted that Gilbert A. Smith failed to prove his judgment and is, therefore, in no position to ask that the conveyances be set aside. At page 82 of the transcript it appears that the execution with a *nulla bona* return thereon issued out of the circuit court on Smith's judgment, and the transcript of the judgment rendered by the justice of the peace were offered in evidence. The record of the judgment in the circuit clerk's office was offered with the understanding that it should be presented later. The judgment was treated as introduced without objection and the chancellor must have had it before him, because he made the following finding in his decree:

''And the court finds that heretofore, towit: on the 23d day of June, 1915, Gilbert A. Smith recovered judgment in the Sebastian circuit court for the Ft. Smith District against R. P. Harris and W. H. Shrader for the sum of $234.17, together with costs amounting to the sum of $14. * * *'' We think Smith's judgment was sufficiently proved.

(5) The remaining question to be determined is whether R. P. Harris transferred the stock of goods

at Eagleton, Polk County, to Wyss Lumber & Trading Company in bad faith to hinder and delay his creditors in the collection of their claims; and whether the money deposited in the City National Bank in the name of Wyss Lumber & Trading Company belonged to R. P. Harris. Appellants suggest that the allegations in the original bill and intervention were not broad enough to include a charge of fraud in transferring the stock of merchandise by R. P. Harris to the Wyss Lumber & Trading Company, and that the amendment charging fraud in the transferring of the stock was made after the judgment had been entered and too late to inform appellants that the transfer of the stock was questioned. The stock consisted of a commissary, run in connection with the mill plant at Eagleton, and was clearly a part of the Eagleton property. It was alleged in the intervention that the Eagleton properties were fraudulently conveyed by Harris to said corporation. We think the allegation was sufficient to include a transfer of this property. Evidence was introduced concerning it, and appellant Harris testified in relation to the transfer and was given ample opportunity to introduce any other evidence he desired.

We have read the evidence very carefully and deem it unnecessary to set it out in detail. The material parts thereof are in substance as follows: Prior to February, 1915, R. P. Harris had been engaged in the banking, lumber, and milling business on an extensive scale and had incurred a large indebtedness. The United States government had sued him for $40,000. While thus involved, he made the following conveyances of his tangible assets: On February 11, 1915, he conveyed all his Sebastian County real estate to J. N. Ward, a brother-in-law, for $9,300. Ward paid him $3,800 in cash and applied the balance to an indebtedness due Ward for money he had paid as surety for Harris.

On February 15, 1915, he executed two mortgages to J. T. Bosley for an expressed consideration of $10,000;

$2,000 on his Scott County lands and $7,500 on his lumber plant and large real estate holdings in Polk County.

On February 17, 1915, he organized the Wyss Lumber & Trading Company, a corporation, and on the same day conveyed it a stock of goods in Polk County, valued at $1,500 for $1,500 in stock at par value. He kept 39 shares of the stock and issued 20 shares to Caesar Wyss, an employee who had been in his employ for years, and 1 share to Minor Pipkin for the purpose of incorporation. Harris testified that he owed Wyss on back salary and partly paid him with said stock.

On May 15, 1915, he conveyed to Wyss Lumber & Trading Company the entire lumber and mill plant and about 1,000 acres of land in Polk County, for an expressed consideration of $3,000 cash.

On May 17, 1915, he assigned his 39 shares of stock in said corporation to Caesar Wyss and the stock was reissued, 38 shares to Wyss and 1 share to Harris. On the same date, 340 additional shares of stock were issued to Wyss, for which he executed his note to Harris for $7,500, to which the stock was attached as collateral. Harris testified that he sold this note later to R. A. Zebold, a banker in Stigler, Oklahoma, for $6,400, and that afterwards Zebold sold the stock to pay the note, and he thought bought it in himself.

On May 29, 1916, he conveyed about 500 acres of land he had purchased at tax sale to Caesar Wyss for an expressed consideration of $500. Harris testified that the consideration expressed in this deed was to be paid by Wyss at a later date.

On June 19, 1916, Wyss assigned 398 shares of Wyss Lumber & Trading stock to Zebold. New stock was issued to Zebold and he transferred one share to Wyss.

From the date of the organization of the corporation to the date of the decree in this case, Harris remained as president and Wyss as secretary of the Wyss Lumber & Trading Company, and managed and controlled its business.

Harris testified that he had conveyed to the several parties all of his visible property and that he had expended all the money received for the assets on debts and living expenses. The money received was not deposited as usual in the banks and checked out, but was carried either on his person or placed in his safety box at the bank.

Wyss, whose name was given to the corporation, had been a trusted employee of Harris for years at a salary of $75 per month. Harris testified that he owed him back salary enough to pay for the 38 shares of stock issued to him, and that he took his note for $7,500 for the other stock.

(6) The record in this case reveals that Harris was an embarrassed debtor, that in a short period of time he placed all of his visible assets beyond the reach of an execution; that they passed to the corporation of his own making, a trusted employee and a near relative; that in payment for the larger part of the assets he received stock in his own corporation and transferred a part of the stock to a trusted employee in payment of a doubtful and stale debt; that with only one share each, he and his friend Wyss were the officers and managers and controllers of the corporation until the decree in this case was rendered; that a part of his lands was conveyed to his employee upon an oral promise to pay in two or three years; and that Harris' embarrassment has proceeded to financial wreck.

In a case bearing these same earmarks, Mr. Chief Justice Hill announced the following rule: ''It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; and when they are voluntary, they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors.'' *Wilks* v. *Vaughan*, 73 Ark. 174. The rule is peculiarly applicable and controlling in this case and the presumption of fraud raised by the facts was not over-

come by the explanation of the transactions by Harris. The various transactions were out of the ordinary and Harris' explanation of them was unsatisfactory. The learned chancellor correctly found that the stock of merchandise was transferred to the Wyss Lumber & Trading Company without consideration and in fraud of appellees and other creditors; and that the moneys deposited in the City National Bank in the name of Wyss Lumber & Trading Company belonged to R. P. Harris.

The decree, in so far as it canceled the conveyances of real estate in Polk County to Caesar Wyss and Wyss Lumber & Trading Company, is reversed and remanded with direction to dismiss the bill as to the Polk County lands for the want of jurisdiction; in all other respects it is affirmed.