SOUTHERN LUMBER COMPANY *v.* RILEY.

5-515                                                   273 S. W. 2d 848

Opinion delivered November 29, 1954.

[Rehearing denied January 17, 1955.]

*Melvin E. Mayfield* and *Surrey E. Gilliam,* for appellant.

*Spencer & Spencer* and *J. S. Brooks,* for appellee.

MINOR W. MILLWEE, Justice. This appeal involves the validity of certain materialman's liens asserted against two separate residential lots and a garnishment against the owner and contractor for the construction of a clinic.

In 1951 and 1952 appellee, E. A. Riley, Jr., doing business as Riley Construction Company, built numerous residences in the City of El Dorado which he sold to prospective homeowners. Two of these houses are involved in this suit. A dwelling was constructed on Lot 6 and the East ½ of Lot 7, Block 10, West Woods Subdivision to the City of El Dorado. Riley sold and conveyed this property to Billy Conn and wife on June 2, 1952. Riley also built a house on Lot 8, Block 3, of the same subdivision which he sold and deeded to Martin Tisdale and wife on May 10, 1952. Liberty National Life Insurance Co. took separate deeds of trust from the owners to secure F.H.A. insured loans for purchase of the properties.

Appellant, Southern Lumber Company, furnished materials to Riley in his building operations. It was the general practice of appellant to keep separate accounts for Riley on each house constructed and the materials sent to each house were charged to that particular job as a separate account. It was also the usual practice that, when Riley completed and sold a house, payment would be made for materials furnished and used on that particular house. Appellant filed separate statements of account for materialman's liens against the two lots involved herein. When Riley became financially embarrassed and unable to meet his obligations, appellant instituted this suit against him on November 19, 1952,

to establish and enforce a materialman's lien against each of the properties. Appellees, Billy Conn and wife, Martin Tisdale and wife, Liberty National Life Insurance Co., Home Finance Co. and Mary Spencer Riley and Annie Laurie Spencer, doing business as El Dorado Real Estate Company, were subsequently made party defendants. Separate writs of garnishment were issued and served on Dr. A. H. Doren on February 3rd and March 25th of 1953 for certain moneys alleged to be owing to Riley for the construction of a medical clinic for Dr. Doren at Smackover, Arkansas.

On August 19, 1953, Riley was adjudicated a bankrupt by the U. S. District Court which directed that the instant suit proceed to a final decree which would also become the judgment of the U. S. District Court. After trial on December 1, 1953, the Chancellor entered a decree rendering personal judgment against Riley in favor of appellant for the two material accounts along with others not involved on this appeal. The court denied appellant's claim of a materialman's lien on the two lots except for the sum of $6.53 on the Tisdale lot. The court also refused to sustain the garnishment against Dr. Brown and ordered his discharge as garnishee.

I. *The Conn Property.* The evidence discloses that Riley completed construction of this house in the early part of April, 1952. The Conns took possession on June 2, 1952, when they received their deed from Riley. The material tickets introduced by appellant showed that the next to last item was charged on April 15, 1952. The last ticket was dated July 24, 1952, and was for certain window screens. Appellant filed its statement of lien on October 21, 1952. There was abundant evidence to the effect that the house was completely constructed with all screens in place when the house was completed in April and when the Conns took possession. There was also evidence that the screens charged to the Conn house on July 24th were actually purchased for and used upon another house constructed by Riley; and that an employee of appellant persuaded Riley to sign a spurious ticket in an attempt to revive a lien which had already expired on

July 24, 1952. In order to defeat a lien for material furnished, the owner or other interested party may show that the material was not used in the construction of the building. *Standard Lumber Co.* v. *Wilson,* 173 Ark. 1024, 296 S. W. 27. The Chancellor's finding that the screens in question were not furnished to or used on the Conn house is fully supported by the preponderance of the evidence. Since the statement of the asserted lien was not filed within 90 days from the last item actually furnished on April 15, 1952, there was no lien against the property. Appellant's attempt to invoke the rule that a lien may be asserted upon two or more lots where materials are furnished under a single contract is without application in the instant case where it is undisputed that the parties treated each house as a separate account and contract.

II. *The Tisdale Property.* Construction of this house was completed April 2, 1952. Riley conveyed to the Tisdales on May 10 and they took possession on June 28, 1952. The last furnishing of materials prior to purchase by the Tisdales was on April 2, 1952, according to the tickets introduced by appellant. Another ticket for a lock set in the amount of $6.53 and dated August 27, 1952, was also introduced. A carpenter who signed the ticket testified that he obtained the lock set and replaced a broken or defective lock on a back door of the Tisdale house on instructions from Riley, and that the Tisdales were at home when the lock was installed. The Tisdales were under the impression that only lost or defective keys were replaced and denied any notice or knowledge of the installation of the new lock. Under this conflicting evidence the Chanceller found that the lock was replaced at the request and with the knowledge of the Tisdales, and that the transaction was not connected with the original construction and completion of the house so as to relate back to and extend the time within which to file a lien for the original construction. The court accordingly adjudged a lien in favor of appellant against the property for $6.53 but refused to sustain a lien for the balance of the claim for construction materials.

This court is committed to the rule that, where a contract to furnish materials is to be regarded as completed, a subsequent gratuitous furnishing of material in the nature of a substitution or replacement to remedy a defect in the material originally delivered will not operate to extend the time within which to claim a lien. *Sebastian Bldg. & Loan Assn.* v. *Minten*, 181 Ark. 700, 27 S. W. 2d 1011. When the defective lock was replaced on August 27, 1952, 147 days had elapsed since the last item furnished under the original construction which was fully completed prior to May 10, 1952. Riley had long since been paid for the house and his instruction to replace the broken or defective lock was a wholly gratuitous undertaking on his part. In these circumstances the Chancellor correctly held that the replacement of the defective lock more than 90 days after completion of the original construction did not operate to extend the time within which to claim a lien therefor.

III. *The Garnishment.* There is no dispute in the material facts on this issue. Prior to service of the first writ of garnishment, Dr. Doren and Riley had entered into an oral contract whereby Riley was to construct a medical clinic building at Smackover, Arkansas, for Dr. Doren. After Riley began construction under the contract he became financially embarrassed and unable to proceed on his own. Thereafter, on February 19, 1953, Dr. Doren entered into a written contract with the El Dorado Real Estate Co. under which the latter agreed to construct the building on the same terms and specifications as agreed to by Riley. El Dorado Real Estate Co. was a partnership composed of Mary Spencer Riley, wife of E. A. Riley, Jr., and Annie Laurie Spencer, her sister and the sister-in-law of Riley. The Company was engaged in the real estate brokerage and loan business and had never before nor since the instant transaction engaged in construction work of any kind and had no state permit to do so. After execution of the written contract between Dr. Doren and the partnership, Riley continued construction of the clinic to completion in the same manner as before, using his own employees, and was in com-

plete charge and possession of the premises as though he had continued his own contract to completion. While the partnership paid Riley nothing for the right to take over the contract, one member testified that he was allowed a credit of $500.00 on a debt he owed the partnership for his services in connection with the completion of the clinic. For all practical purposes, the only change made in the method of construction under the two contracts was the substitution of the name of the partnership for that of Riley.

Although Dr. Doren answered both writs of garnishment by stating that he did not owe Riley, it was stipulated at the trial that at the time of the service of the second writ he held in his hands $2,352.08 which was due someone for the construction of the clinic. After rendition of the decree, a consent order was entered under which Dr. Doren was permitted to deposit said sum in the registry of the court and be discharged from further liability in the case.

Under the foregoing circumstances, we think the Chancellor erred in refusing to sustain appellant's contention that the attempted change, transfer or assignment of the construction contract from Riley to his wife and sister-in-law was a colorable transaction amounting to a fraud upon appellant and other creditors of Riley under our statute (Ark. Stats., § 68-1302). It is a well-settled rule that transfers or conveyances made to near relatives and members of the household of an embarrassed debtor are looked upon with suspicion and scrutinized with care. When such transactions are voluntary, they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are conclusively presumed to be fraudulent as to existing creditors. *McConnell* v. *Hopkins*, 86 Ark. 225, 110 S. W. 1039. Nor does it matter how pure the motive which induced the transfer or assignment of the contract if the result thereof was to reduce Riley's assets to such an extent as to hinder and delay his creditors in the collection of their debts. *Brady* v. *Irby*, 101 Ark. 573, 142 S. W. 1124, Ann. Cas. 1913E. 1054.

Appellees argue that the question of a fraudulent transfer cannot be raised in a garnishment proceeding in Arkansas. The rule generally accepted in a majority of jurisdictions is that garnishment is available as a remedy as to property fraudulently assigned for the purpose of defrauding creditors. 37 C. J. S., Fraudulent Conveyances, § 310. Appellees rely on *Himstedt* v. *German Bank,* 46 Ark. 537, in support of their contention that Arkansas is committed to the minority view. That case involved an action at law in which all the interested parties were not before the court, and it was held that the creditor's remedy was in equity. The instant suit is in equity and all interested parties were before the Court. Our holding that the general rule is applicable in the instant case is not contrary to our holding in the Himstedt case.

It is also argued that there was no transfer or assignment of Riley's contract within the meaning of our statute, or, if there was, it was not voluntary. We think it was unnecessary that there be a formal assignment of the contract under the broad terms of Ark. Stats., § 68-1302, *supra.* It is undisputed that the partnership took over the identical contract made by Riley and that the latter performed as though no transfer had been made and while he was hopelessly insolvent. It is not the nature or form of the transaction, but the presence of fraud which brings a case within the prohibition of statutes relating to fraudulent transfers or conveyances. 24 Am. Jur., Fraudulent Conveyances, § 62. A preponderance of the evidence also supports the conclusion that there was a voluntary assignment of the contract without a valid consideration.

That part of the decree dismissing the garnishment against Dr. A. H. Doren is accordingly reversed and the cause remanded with directions to pay said sum of $2,-352.08 on deposit in the registry of the Court to appellant. In all other respects the decree is affirmed.