HORN *v.* HORN.

5-2183                                    339 S. W. 2d 852

Opinion delivered November 14, 1960.

*Richard W. Hobbs,* for appellant.

*J. Harrod Berry,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal questions the decree of the Chancery Court made to obtain the dower previously awarded to the wife in a divorce decree. On July 25, 1958 the Pulaski Chancery Court rendered a decree awarding Mrs. Mary Horn (appellee here) a divorce from J. W. Horn (one of the appellants here), and the decree contained this language as to dower and retained jurisdiction:

"The Court further finds that Plaintiff is entitled to the sum of $11,666.66 as a statutory dower settlement of and from the monies of defendant, said sum being one-third of the monies of defendant, and which said sum is hereby decreed to said plaintiff against defendant as a property settlement. It is therefore considered, ordered and decreed by this Court that defendant J. W. Horn shall pay immediately to plaintiff the said sum of $11,666.66, for which execution, garnishment, and citation for contempt may issue as upon a judgment at law. . . . The Court doth retain control of this cause for such further orders and proceedings as may be necessary to enforce the rights of the parties herein. . . ."

It had been shown in the divorce case that Mr. Horn had recently received the sum of $35,000 cash in a settlement with the Rock Island Railroad Company; and the Court awarded Mrs. Horn $11,666.66 from said amount. Later, Mr. Horn sought to have the decree of July 25th modified, and claimed that he had no money at the time the decree was rendered; but such effort at modification was unsuccessful and the decree of July 25, 1958 has long since become final and is not an issue on this appeal.

Mr. Horn did not pay the dower awarded to Mrs. Horn, and in September, 1958 she filed in the Pulaski Chancery Court her petition and amended petitions alleging, *inter alia,* that Mr. Horn was attempting to conceal his assets by having his property placed in the name of W. C. Irwin and Mary Irwin, husband and wife;

and certain definitely described property in Garland County, Arkansas was listed in the petitions. The Arkansas Trust Company of Hot Springs was also named as a garnishee. The status of the Irwins when brought into the case and their objections to such procedure will be discussed in Topic I, *infra*. Trial in the Pulaski Chancery Court resulted in a voluminous record. On November 2, 1959 a decree was rendered in which the Pulaski Chancery Court found that Horn had concealed his assets by putting them in the name of the Irwins and that the Irwins were trustees of the Horn assets. The decree directed execution issue against specific property to satisfy the dower award of Mrs. Horn;[1] and it is from the said decree of November 2, 1959 that this appeal is prosecuted both by Mr. Horn and by the Irwins.

I. *Jurisdiction And Venue.* As aforesaid, Mrs. Horn filed her petition in the Pulaski Chancery Court in September, 1958 and for the first time named the Irwins. They filed a demurrer to the petition and amended petitions, stating that, ". . . the Court has no jurisdiction of the persons or subject of the action, and that the complaint did not state facts sufficient to constitute a cause of action." When the demurrer was overruled, the Irwins filed answer and proceeded to trial, which resulted in the decree of November 2, 1959, as aforesaid. On appeal the Irwins[2] now say: "(a) Appellee's petition was an action independent of the divorce; and (b) the venue of a subsequent suit would be in Garland County." To sustain their contentions, the Irwins cite: *Renn* v. *Renn,* 207 Ark. 147, 179 S. W. 2d 657; *Hardy* v. *Hardy,* 228 Ark. 991, 311 S. W. 2d 761; *Wilson* v. *Wilson,* 163 Ark. 294, 259 S. W. 742; *Fullerton* v. *Fullerton,* 230 Ark. 539, 323 S. W. 2d 926; *Harris* v. *Smith,* 133 Ark. 250, 202 S. W. 244; *Ark. Mineral Products Co.* v. *Creel,* 181 Ark. 722, 27 S. W.

---

[1] The specific property (both real and personal) was sold and purchased by Mrs. Horn for the amount of her dower claim.

[2] The record before us fails to disclose that Mr. Horn ever filed any pleading or objection to the venue of the Pulaski Chancery Court, so this topic involves only the Irwins.

2d 1003; and also the following sections of Arkansas Statutes: 34-1214, 29-506, 29-508, 27-601, and 27-613.

The gist of the Irwin argument is that: (1) when the Pulaski Chancery Court rendered judgment for Mrs. Horn for $11,666.66 such judgment made her a creditor of Mr. Horn; and (2) as a creditor she should have proceeded in Garland County to seek to set aside the alleged fraudulent conveyances involving the real estate in that County. We do not agree with the Irwins in these contentions. There are several possible answers, but we need give only one. In the divorce decree of July 25, 1958, the Court found that Mr. Horn had certain moneys and that $11,666.66 was one-third of the said moneys; and this amount was awarded Mrs. Horn as ''statutory dower''; and the decree retained control of the cause ''for such further orders and proceedings as may be necessary to enforce the rights of the parties herein.'' When Mr. Horn did not pay the money in accordance with the decree, Mrs. Horn had a right to ask the Chancery Court to aid her in obtaining her dower. She had learned that Mr. Horn was transferring his property and assets to the Irwins, and she caused them to be cited into the Pulaski Chancery Court.

Mrs. Horn's proceedings against the Irwins were in the nature of an equitable garnishment.[3] In *Riggin v. Hillard,* 56 Ark. 476, 20 S. W. 402, Chief Justice Cockrill said: ''Every equitable proceeding wherein a remedy is devised to apply the debt of a third person to the extinguishment of the plaintiff's demand against his debtor is a suit for an equitable garnishment.'' In *So. Lbr. Co.* v. *Riley,* 224 Ark. 298, 273 S. W. 2d 848, we held that garnishment in equity was available as a remedy to reach property fraudulently conveyed. And in *Sneed* v. *Sneed,* 172 Ark. 1135, 291 S. W. 999, we held that equitable garnishment was the proper remedy allowed a divorced wife, to whom the husband owed money, to impound a fund due the husband. Mrs. Horn wanted to ascertain and subject to her dower claim

---

[3] We have a number of other cases on equitable garnishment. Some of them are cited in *C. A. Rees & Co.* v. *Pace,* 156 Ark. 473, 246 S. W. 491.

whatever funds or properties the Irwins had that belonged to Mr. Horn. Under § 31-513, Ark. Stats. the Pulaski Chancery Court had power to issue garnishment and/or execution on its decree of July 25, 1958. See *The McGehee Bank* v. *Greeson,* 223 Ark. 18, 263 S. W. 2d 901.

The Court found that the Irwins had in fact received money from Horn and held property for him, and execution was then issued by the Pulaski Chancery Court. Under § 30-202, Ark. Stats., an execution may be levied on property conveyed to defraud creditors. See *Baldwin* v. *Williams,* 74 Ark. 316, 86 S. W. 423. What the Pulaski Chancery Court did in the case at bar[4] is very much like what the Perry Chancery Court did in *Morgan Utilities* v. *Perry County,* 183 Ark. 542, 37 S. W. 2d 74. See also *Merchants & Farmers Bank* v. *Harris,* 113 Ark. 100, 167 S. W. 706. The cases cited by the appellants, as previously listed, have factual situations far different from those existing in the case at bar; and we find no merit to the Irwins' contentions as made under this point.

II. *The Facts.* The Irwins, as well as Mr. Horn, most vigorously contend that the evidence in the case at bar does not support the Chancellor's finding that the Irwins had any money or property belonging to Mr. Horn at any time after July 25, 1958; and this contention necessitates a brief recital of the salient facts. As previously indicated, Mr. Horn obtained a settlement of $35,000 cash for injuries which he received while working for the Rock Island Railroad Company. On March 24, 1958 Mr. Horn (listing his residence as 518 Ringo, Little Rock, Arkansas) opened up three accounts in the Arkansas Trust Company in Hot Springs, Arkansas. The first was for $5,000; the second was for $5,000; and the third was for $24,500. On March 25, 1958 (just five days later) Mr. Horn closed out all three of these accounts.

---

[4] An interesting case from a sister jurisdiction and involving the wife's effort to recover dower in property fraudulently conveyed is *Newton* v. *Falligant,* 166 Ga. 450, 143 S. E. 391.

The testimony is crystal clear—in fact, it is practically admitted—that on March 25, 1958 Mr. Horn delivered to W. C. Irwin a check for $24,500, and on the same day W. C. Irwin opened an account in the Arkansas Trust Company and deposited therein the $24,500 check that Mr. Horn gave him. The Irwin account was styled, "W. C. Irwin or W. C. Irwin, Jr., Agent." From that account Irwin bought the real estate and the personal property here involved. The photostats of the checks and the bank records establish all these facts without a doubt. But to overcome the effect of the above proof, both Mr. Irwin and Mr. Horn testified to a most bizarre statement of facts. Mr. Horn said he transferred the $24,500 to Irwin so Irwin could let him have money when he wanted it, even when the banks were closed; that from time to time he obtained cash from Irwin for large sums of money; and that he gambled away this money at the races, and various other places, so that by July 25, 1958 Horn had no money, and in fact owed money to Irwin.

Irwin testified to practically the same statement of facts: that he paid Horn in cash from money that Irwin had in his safe at the Martin Recreation Center in Hot Springs; that at one time he gave Horn three $500 bills; and by July 25, 1958 Irwin had paid Horn back all of Horn's $24,500. Irwin explained the record of checks from the Arkansas Trust Company by saying that he paid Horn in cash and then used the trustee account in lieu of opening up a personal account. This testimony was most bizarre and the Chancery Court did not believe the testimony. On appeal the attorneys for Irwin and Horn tell us that the testimony of their clients is uncontradicted by anyone and that the Chancery Court committed reversible error in failing to believe the stories of Irwin and Horn. That is the gist of this point.

We hold that the Chancery Court was not bound to give credence to the stories told by Irwin and Horn. All the testimony offered to prove a return of any part of the $24,500 by Irwin to Horn was the testimony of

these parties; and each was an interested party in this proceeding by Mrs. Horn to recover her dower. The testimony of a litigant interested in the result is never considered uncontradicted in weighing such testimony. In *Metcalf* v. *Jelks*, 177 Ark. 1023, 8 S. W. 2d 462, we said: "Another rule established by this Court is that the testimony of a party to an action, who is interested in the result, will not be regarded as undisputed in determining the legal sufficiency of the evidence. *K. C. S. R. Co.* v. *Cockrell*, 169 Ark. 698, 277 S. W. 7; *Gish* v. *Scantland*, 151 Ark. 594, 237 S. W. 98." One strong bit of testimony is that a part of the $24,500 was used by Irwin to purchase a house in Hot Springs and pay for the furnishings in the house; that Horn was living in the house at the time of the trial; and that he sought to claim the house as his homestead and the furnishings as his personal exemptions against Mrs. Horn's dower claim. How, then, can Horn be heard to say that he is renting the house and furniture from his good friend Irwin! It would unduly prolong this opinion to detail other evidence.

The decree of the Pulaski Chancery Court is affirmed.