McElwee v. McElwee.

Opinion delivered March 8, 1920.

1.  DESCENT AND DISTRIBUTION—ANCESTRAL ESTATE.—In order to constitute a gift from a parent to a child an ancestral estate, the conveyance must be entirely in consideration of blood without any consideration deemed valuable in law.

2. DESCENT AND DISTRIBUTION—ANCESTRAL ESTATE.—Where a parent who took a life estate in lands under his father's will with remainder to his children induced a child to convey his interest in consideration of a conveyance of other land, such a child's interest in the land so conveyed is a new acquisition, and not an ancestral estate.

3. HOMESTEAD—ABANDONMENT.—Where a married man moved from his rural homestead to a town house belonging to his wife, and rented his farm, but retained the house, so that they could return at any time, intending to return to it when his health should be restored, there was no abandonment.

4. HOMESTEAD — ABANDONMENT.—Where a widow within a month after her husband's death asserted a claim to a homestead in her husband's land, it can not be said that she elected not to claim such homestead, though she resided in a town house belonging to her for more than a year after her husband's death.

Appeal from Pope Chancery Court; *Jordan Sellers,* Chancellor; affirmed.

*U. L. Meade,* for appellants.

1. The land was ancestral and not a new acquisition and the intestate had never abandoned it as a homestead. 71 Ark. 594; 54 *Id.* 11; Thompson on Homesteads, § 2251; 33 Ark. 399; 31 *Id.* 145; 29 *Id.* 280; 41 *Id.* 94. If John C. McElwee abandoned his homestead in 1911 his widow could not re-establish after his death by moving back on it after his death. Cases *supra;* 101 Ark. 296; 107 *Id.* 535; 73 *Id.* 266; 104 *Id.* 637.

2. Under the testimony the 80-acre tract, the east half southwest quarter, section 11, was ancestral and the widow is only entitled to be endowed in a life estate of one-half of said tract, and the fee to the whole 80 should be decreed to appellants. 15 Ark. 275; *Ib.* 555; 98 *Id.* 93; Kirby's Digest, § 2645; 70 Ark. 371.

Appellants and their ancestor, James McElwee, are tenants in common to all of said land. And, if so, the fact that John C. McElwee executed a deed of release to his reversionary interest in the South Carolina land to his father, James, did not amount to a purchase by John C. from his father and would not make it a new acquisition, but on the contrary it was ancestral. 19

Ark. 404; 98 *Id.* 118; 104 *Id.* 23; 107 *Id.* 594; 39 L. R. A. (N. S.) 1912, p. 957, and note; 94 Atl. Rep. 145.

*Hays & Ward,* for appellee.

1. If the estate is ancestral and not a homestead, it is subject to partition, and appellee is entitled to one-half for life only, the fee being in appellants. Kirby's Digest, § 2709.

2. If ancestral, and the homestead of appellee, then it is not subject to partition, as the widow is entitled to all of said lands so long as her homestead continues. Const. 1874, art. 9, § 6; 92 Ark. 260.

The case in 98 Ark. 93 does not determine that these lands are ancestral, and they were a new acquisition. 98 Ark. 100; 18 C..J. 819; 4 Elliott on Contracts, p. 1060, § 3849.

3. This court will not disturb the findings upon conflicting evidence unless they are clearly against the weight of the evidence. 84 Ark. 429; 100 *Id.* 370.

4. Appellants further contend that John C. McElwee obtained these lands in a "family settlement," but the evidence is against them.

John C. McElwee did not abandon the homestead. The chancellor found there was no abandonment, and the evidence sustains the finding. 55 Ark. 55; 101 *Id.* 103; 65 *Id.* 373; 81 *Id.* 154. Forfeitures are not favored, and homestead laws are liberally construed. 13 R. C. L., p. 656, § 647; 64 Ark. 7; 100 *Id.* 399; 78 *Id.* 479. As there was no abandonment by John C. McElwee in his lifetime, the court's finding will not be disturbed.

The widow was not required to make her election as to homestead until after her husband's death. 71 Ark. 594; 45 *Id.* 303. See, also, 42 *Id.* 503; 48 *Id.* 230; 104 *Id.* 313.

Smith, J. Appellee is the widow of John C. McElwee, who died intestate and without issue, and appellants are his collateral heirs; and the litigation involves the division of his estate. The points at issue have narrowed until only two remain to be decided.

The first question is whether east half southwest quarter, section 11, township 7 north, range 20 west, owned by the intestate at the time of his death, was ancestral or a new acquisition. The point is, of course, that if the land was a new acquisition the widow takes a half interest in fee, while if ancestral she takes a half interest for life.

The second question is whether the intestate had abandoned the land above described as a homestead.

Upon the first proposition it is shown that the grandfather of decedent, whose name was William McElwee, Sr., owned 700 acres of land in South Carolina, which he willed to the father of John C. McElwee, whose name was James McElwee, for and during the life of the same James McElwee, and at his death to any children born to the said James McElwee. There were five of these children. James McElwee removed to this State, and became the owner by purchase of 320 acres of land, the eighty above described being a part thereof. He conveyed an eighty-acre tract to each of four of his children in consideration of their conveyance to him of their interest in the South Carolina lands. A conveyance from the fifth child was also secured by James McElwee, and the consideration for this deed was the sum of $1,000 cash paid. It is now insisted that these conveyances constituted nothing more than a family settlement and resulted in giving decedent, John C. McElwee, title in severalty to the eighty acres herein described, and that his title is therefore ancestral in its character.

The distinction between an ancestral estate and a new acquisition is pointed out in the case of *Martin* v. *Martin,* 98 Ark. 93, the facts of which case are somewhat similar to those of the instant case. It was there said: "The purpose of the statute creating ancestral estates was to keep such estates in the line of the blood from whence they came, and blood must be the only consideration by which they are acquired, whether by devise or gift. * * * We conclude that, in order to constitute a gift from a parent to a child an ancestral estate within the

meaning of our statute, the conveyance must be entirely in consideration of blood and without any consideration deemed valuable in law; and if such deed is executed partly for a valuable consideration, the estate acquired is a new acquisition."

Under this test we think the estate was not ancestral. What happened here was that James McElwee undertook to secure from his children the fee to 700 acres of land in which he had only a life estate, and he did this by trading lands and paying money. This was not a family settlement, and it can not be said that ancestral blood was the only consideration, if, indeed, it was any part of it.

John C. McElwee resided on the land above-described from the time of his marriage in 1880 until 1911, a period of thirty-one years, and the proof of abandonment consisted in the testimony of J. N. McElwee, a brother, who stated: "Brother J. C. wrote me that his wife had sold her place, which was adjoining his, and had bought in Russellville. That he was not able to farm and would rent out his place and make Russellville his home." As appears from this answer the Russellville home was the property of the widow, and she and her husband resided there from 1911 until his death on August 18, 1918.

Mrs. McElwee testified that her husband's health failed, and she thought it best for him to move to town to be nearer a doctor, but that while they rented their lands they never at any time rented their home on it, but kept the house so they could go back to it at any time, and that it was always their intention to return to it when the husband's health was restored, but that he never recovered his health. In writing his brother that he would make Russellville his home J. C. McElwee may have intended only that he had changed his residence for a time; and the explanation made by his wife shows that was what he did intend to say.

It is finally insisted that Mrs. McElwee made an election to select the town property as her homestead by

residing on it for about a year after the death of her husband. But this suit was brought within about a month after the death of her husband, and in her answer, which she soon thereafter filed, she claimed the farm home as her homestead. It can not, therefore, be said that she has elected not to claim the homestead of her husband as her own.

Decree affirmed.