Dowell *v.* Dowell.

4-7384                                         182 S. W. 2d 344

Opinion delivered June 26, 1944.

*Ben C. Henley* and *J. Smith Henley,* for appellant.

*Lessie Williams,* for appellee.

SMITH, J. Mrs. Lillie Dowell brought this suit for a divorce from her husband, Lewis Dowell, and as grounds therefor alleged that he had been guilty of such cruel and harsh treatment as to endanger her life, and that he had been convicted of a felony. She alleged also that her husband was disposing of his property with the intent and for the purpose of depriving her of the benefit of § 4393 of Pope's Digest, this being the section of the statute providing for the division of property of a married couple where a divorce is granted. She prayed that such disposal be enjoined, pending the hearing of her suit for divorce, and that prayer was granted.

An answer was filed in which defendant Dowell admitted that he had been convicted of a felony, to-wit, the crime of manslaughter, but he alleged that the party killed was his wife's paramour. He prayed that a decree

of divorce be granted him, on account of his wife's infidelity, and that she be denied any share of his estate.

After hearing much conflicting testimony, the court awarded the wife a divorce, and made division of the husband's property pursuant to the statute above mentioned, from which decree the husband has appealed.

Disposing first of the right of the wife to a divorce, it may be said that the husband told a fantastic story of his wife's attempt to poison him, and of her infidelity to him; it was wholly uncorroborated, which the chancellor did not credit, nor do we.

The parties were married in 1913, and so far as the record before us reflects, only one child, a son named Frank, was born to this union, at any rate he was the only living child when the marital troubles of these parties began in July, 1941. The father, at the suit of the son, was committed to the State Hospital for Nervous Diseases, where he remained until April 29, 1942. Returning home from the hospital he killed the man who, according to his testimony, was his wife's paramour, and he later shot his son. For the first offense he was sentenced to the penitentiary; for the second a fine of $500 was imposed. The son later died, whether from the effect of his wound does not appear.

The decree from which is this appeal contains the finding that, at the time of its rendition, the husband owned certain lands, and finds also, that at the time of the son's death, he, the son, was the owner of other lands, which were also described. Probably the most important question in the case is whether the lands owned by the son were ancestral or were new acquisitions. The son had title to the lands owned by him, at the time of his death, under three separate deeds from different grantors, but the major portion of his lands were acquired under a deed from his father and mother, the lands thus conveyed having belonged to the father.

The relevancy and importance of the question just stated is that the answer thereto determines the interest

which the mother takes in the lands of her son, who died intestate, unmarried, without issue and without creditors. By § 4338 of Pope's Digest, it is provided that:

"When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower in the following manner:

"First: To children, or their descendants, in equal parts.

"Second: If there be no children, then to the father and mother in equal parts, or, if one parent be dead, then the whole to the surviving parent; if no father or mother, then to the brothers and sisters, in equal parts.

"Third: . . ."

Section 4347 of Pope's Digest provides that: "In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate shall ascend to the mother and her heirs; but if the estate be a new acquisition, it shall ascend to the father and mother for life in equal shares, and upon the death of one parent, the share enjoyed by such parent during his or her life shall pass to the sole surviving parent for life, and then, both shares shall descend in remainder to the collateral kindred of the intestate in the manner provided in this act. . . ."

The court found that the lands owned by the son at his death, were a new acquisition, and upon that finding, awarded to each parent an equal undivided one-half interest in the son's lands, in fee, and in addition directed that the wife take, under § 4393, Pope's Digest, a one-third interest in the land which the father had inherited from his son. There was error in this respect. If the lands were a new acquisition as found by the court (a finding which appellant questioned, and which will later

be reviewed) then each parent took an equal undivided one-half interest, but neither took the title in fee, as found by the court. Under § 4347, Pope's Digest, above quoted, each parent took only a life estate. But in addition to the interest which the mother took as the heir of her son, she was entitled to share, under § 4393, Pope's Digest, in the interest which her husband took as heir of his son.

As stated, the husband questioned the finding that the son had title as under a new acquisition, the insistence being that the lands conveyed to him by his father and mother, but which had been owned by the father, constituted an ancestral estate, and that having come to the son from the father, they should, as an ancestral estate, ascend to the father alone, and to the exclusion of the mother.

We think, however, that the court was warranted in finding that the son's estate in the lands owned by him at his death, was not ancestral, but a new acquisition. The deed to the son from his parents recites that it was executed, "For and in consideration of the sum of one dollar and other good and valuable considerations, to us paid by Frank Dowell, do hereby grant, bargain and sell unto the said Frank Dowell, and unto his heirs and assigns forever, the following described lands . . . ," which are then described.

It was held in the cases of *Martin* v. *Martin,* 98 Ark. 93, 135 S. W. 348, and *McElwee* v. *McElwee,* 142 Ark. 560, 219 S. W. 30, that ancestral estates come from no other consideration but that of blood; all others are new acquisitions. Our cases on this subject were reviewed in the case of *Webb* v. *Caldwell,* 198 Ark. 331, 128 S. W. 2d 691, 122 A. L. R. 814, where we quoted, with approval, the following statement from the case of *McElwee* v. *McElwee, supra*: "In order to constitute a gift from a parent to a child an ancestral estate within the meaning of our statute, the conveyance must be entirely in consideration of blood and without any consideration deemed valuable in law, . . ." We think the court was warranted

in finding that there was a consideration other than that of blood, this being the labor of the son, both before and after the conveyance to him, in the management of his father's business.

The real estate here involved was unencumbered, and its sale *in solido* was ordered. It is insisted that this order was erroneous, and that the lands should have been divided in kind. The sheriff, county judge and circuit clerk of the county were appointed commissioners and directed to consider this question, and an adjournment of the hearing was had to enable the commissioners to report on the question, and they found in a unanimous report that the lands were not susceptible of division in kind, and, upon the approval of that report, the lands were ordered sold. We approve this order, but we think it was error to direct the sale of the land *in solido*. The value of the respective tracts of land is not shown, and if they were sold *in solido*, there would be no way of knowing what one tract brought as distinguished from the others. The father has title to certain lands in fee, while he and his wife have only a life estate in other lands, and the proceeds of the sale can be more equitably divided than can the lands themselves, if indeed they could be divided in kind, which the court found could not be done. It is urged that it is error to order the lands sold at all, but § 4393, Pope's Digest, specially authorizes that action in proper circumstances. See cases cited in the Digester's note to this section. The order for the sale of the lands will, therefore, be approved, the proceeds to be distributed in accordance with the law.

The real estate was unencumbered, but on June 8, 1943, appellant executed a chattel mortgage on a portion of his personal property, securing a debt alleged to be due James R. Dowell, a nephew. The court held, however, that the wife took her interest in the personalty free from this conveyance, this, no doubt, upon the theory and finding that the mortgage was executed in fraud of and to defeat the wife's marital rights; and we think the testimony supports this finding, and we, ourselves, find this to be a fact.

Appellant says in his brief that "After the summer of 1941 and before 1943 appellant's domestic difficulties were aired publicly in five separate court proceedings in Boone county," the home of the parties. There was no testimony as to the debt due by appellant to his nephew except that of the appellant himself, which evidently was not credited by the court below; and the personal property was ordered divided as if it were unencumbered.

It is said in 27 C. J. S., § 273, p. 1078, Chapter "Divorce," that, "A conveyance made by the husband in anticipation of the wife's libel for divorce, and to prevent her from recovering alimony, is fraudulent, and may be set aside. . . ." Here, the chattel mortgage above mentioned was executed shortly before this suit was filed, but we think it was executed in contemplation of the suit and fully warranted the court in enjoining appellant from further disposing of his property in the preliminary order made by the court. Our opinion in the very recent case of *Renn v. Renn, ante,* p. 147, 179 S. W. 2d 657, sustains the action of the court in regard to this mortgage.

It is said in 27 C. J. S., page 1078, Chapter "Divorce," that, "A conveyance made by the husband in anticipation of the wife's libel for divorce, and to prevent her from recovering alimony, is fraudulent, and may be set aside. . . ." Here, the chattel mortgage was executed shortly before this suit was filed, but we think it was executed in contemplation of the suit and fully warranted the court in enjoining appellant from further disposing of his property in the preliminary order made by the court. Our opinion in the very recent case, not yet officially reported, that of *Renn v. Renn, ante,* p. 147, 179 S. W. 2d 657, sustains the action of the court in regard to this mortgage.

Much of the testimony in the voluminous record before us relates to the ownership of the personal property as between the father and mother and their son, but it would serve no useful purpose as a precedent in future cases to review this conflicting testimony in detail.

It appears that before the institution of this suit the parties owned 40 head of cattle, and that the wife sold 9 head of these, and that one of them died. The wife testified that the 9 head which she sold were the progeny of the cow and heifer calf given her by her father at the time of her marriage, and that the proceeds of this sale did not exceed the value of her individual interest in the herd, and the decree is predicated upon the truth of this statement.

Thirty head of cattle remained and it was decreed that these were the property of Frank and his father, and that Mrs. Dowell was entitled to a half interest in the cattle owned by her son, the father inheriting the other half. It appears that an execution issued upon the judgment imposing a fine upon Dowell for shooting his son, and that 15 head of the cattle, of the value of $713.25, were sold in its satisfaction, and that after this sale 13 head of cattle were sold by agreement of the parties, under an order of the court. If there were other cattle remaining they are not accounted for.

We think it inequitable that the interest of Frank Dowell in these cattle should be charged with the satisfaction of the fine imposed upon the man who shot him, and in the settlement of the proceeds of the sale of the cattle, that item will be charged against Dowell's interest. Subject to this charge, Dowell will be credited with one-half the proceeds of the cattle and the value of the one-half interest inherited from his son, against which half interest, however, should be charged the interest therein which Mrs. Dowell has under § 4393, Pope's Digest. Section 2517, S. & H. Digest, now appearing as § 4393, Pope's Digest, was construed in the case of *Beene* v. *Beene,* 64 Ark. 518, 43 S. W. 968, where it was said:

"As to the question of alimony, that is settled by statute. Sec. 2517, Sand. & H. Dig. The Legislature seems to have enacted that statute for the purpose of putting an end to all after controversies as to dower rights, and to settle the matter when a divorce is granted dissolving the marital bonds. Hence the allowance to the

divorced wife, who is entitled at all, is exactly or substantially the same as would be her dower interest in case of death of her husband; that is to say, one-third for life of all the real estate of which he has been seized of an estate of inheritance at any time during the marriage, except such as she has relinquished in due form. The court therefore erred in decreeing her only one-third of the remainder of his estate after deducting the amount of his debts, and should have allotted her one-third the value of his personalty absolutely, without taking his indebtedness into consideration, and should have given her one-third of his realty for her natural life, and ordered otherwise as the statute provides." See, also, *Williams* v. *Williams,* 150 Ark. 319, 234 S. W. 169.

When Dowell was committed to the State Hospital for Nervous Diseases, his son Frank was appointed as his guardian, and upon Dowell's discharge from the hospital, he filed a proceeding in the probate court for an accounting of the son's administration during the disability of his father. Exceptions were filed by Dowell to his son's settlement upon the hearing of which the testimony of his son was offered in evidence and transcribed.

In the decree from which is this appeal the court awarded title to a Ford automobile to Mrs. Dowell, who had referred to it as the property of her son, whereas it is argued that the testimony of the son at the probate hearing above referred to would, if admitted, have shown that Dowell was the owner of the automobile; but the court excluded that testimony. We think this was error. The son was a strong partisan of his mother, yet he testified in the probate proceeding that the car belonged not to her, but to his father. This was testimony given by one while in possession and was against his interest, and should, therefore, have been admitted, and when admitted and considered we think the finding should have been made that the car belonged to Mr. Dowell, and not to his wife. The decree must be modified in this respect. See *Norden* v. *Martin,* 202 Ark. 180, 149 S. W. 2d 550, and cases there cited; § 65, chapter on Admissions and Declarations, vol. 1, p. 371, Nichols' Applied Evidence.

Frank and his father owned a garden of Golden Seal or Ginseng which they undertook to divide equally, but on February 12, 1943, Dowell executed a bill of sale for his interest to his brother, W. M. Dowell, which appellant Dowell says was executed in payment of his indebtedness to his brother. This bill of sale was executed while Dowell was an inmate of the penitentiary.

A part of the Golden Seal was marketed by a receiver appointed by the court. The remainder was shipped by appellant Dowell to St. Louis after the institution of this suit and sold for the gross sum of $2,558.08 for the account of Dowell's brother, W. M. Proceeds of the remainder sold by the receiver are in his hands. The proceeds of the sale of the Golden Seal shipped to St. Louis are in the hands of the Commission Company there, which made the sale, and will probably not be paid over to anyone until the title thereto has been adjudicated. W. M. Dowell, for whose account the Golden Seal was sold, is not a party to this proceeding, and is entitled to his day in court, and this he must have by being made a party before his right to the money in St. Louis is concluded by any division of it between Mr. and Mrs. Dowell. Upon the remand of the cause, which will be ordered, further and appropriate action will be taken to vest title to the proceeds of the Golden Seal now in St. Louis.

We find no error in other orders relating to other personal property, and as to such property the decree is affirmed. But the cause will be remanded for further proceedings in accordance with this opinion.