WHALEY *v.* WHALEY.

5-584                                                         275 S. W. 2d 634

Opinion delivered February 21, 1955.

*W. M. Thompson,* for appellant.

*Fred M. Pickens* and *W. J. Arnold,* for appellee.

ED. F. McFADDIN, Justice. The parties married in 1929, and lived and worked together for many years. They separated; and Mr. Whaley sued for divorce and property settlement. The Court awarded him a divorce;

but he now appeals because of the other matters herein discussed.

I. *Setting Aside an Earlier Decree.* Mr. Whaley filed suit on April 16, 1953, and obtained personal service. When the case was tried on June 2nd, Mrs. Whaley represented herself. At the conclusion of the trial, the Court rendered a decree (hereinafter called the "June decree") awarding Mr. Whaley a divorce and making a division of the property as urged by him. Then on August 10, 1953, Mrs. Whaley, by counsel, filed a petition to set aside the June decree. At a hearing on September 11th, the Court set aside the June decree and ordered the cause heard on its merits which was later accomplished.

Mr. Whaley insists that the Court committed error in setting aside the June decree; but we see no merit in such claim. The terms of the Independence Chancery Court are the first Tuesday in June and December (see § 22-406, Ark. Stats.). The June decree was rendered on the first day of the June term. The order of September 11th—setting aside the June decree—was made during the same June term of the Court. In *Union Sawmill Co. v. Langley,* 188 Ark. 316, 66 S. W. 2d 300, we cited earlier cases, and stated:

"We have repeatedly held that, during the term of court at which a judgment is rendered, the court has the inherent power to set aside the judgment, and it may do so without stating any cause. . . . We know of no case, and our attention has been called to none, that prohibits a court from controlling its orders and judgments during the term in which they were entered."

Even though not required to assign any reason, nevertheless, in the order of September 11, 1953, the Court stated several valid and sufficient reasons for setting aside the June decree.

II. *Appointment of Guardian Ad Litem.* In the order of September 11, 1953, the Court said:

". . . and even though the court is not an alienist by any means, the court has serious doubts as to the ability of the defendant-petitioner to handle her business and to handle her defense in this matter; and to protect the interests of all parties, said decree should be and the same is hereby vacated and set aside.

"(2) The court doth hereby appoint Hon. Fred M. Pickens, a member of the bar of this court, as *guardian ad litem* to defend this cause on behalf of the defendant-petitioner."

Mr. Whaley complains that the Court should not have appointed a *guardian ad litem* for Mrs. Whaley, since on the subsequent trial her testimony was received on many disputed matters; but we see no merit to such contention. Mrs. Whaley had been sent by her brother to the State Hospital for Nervous Diseases several years ago, and Mr. Whaley had obtained her release. The Chancellor saw Mrs. Whaley, and decided that her interest should be protected by a *guardian ad litem.* In *Peters* v. *Townsend,* 93 Ark. 103, 124 S. W. 255, we said:

"Section 34, article 7, of the Constitution of 1874 provides that probate courts shall have 'exclusive original jurisdiction in matters relative to * * * persons of unsound mind and their estates'; but an insane person not under guardianship can sue and be sued the same as a sane person, and the foregoing provision of the Constitution does not exclude the jurisdiction of other courts to hear and determine suits by or against insane persons, whether under guardianship or not.

"The statutes of this State confer ample protection to the rights of insane litigants, either plaintiff or defendant, by requiring the court in which the action by or against such person is pending to see that he is represented by a next friend or guardian. An action by such person must be brought by guardian or next friend, and the defense of such person must be by his regular guardian or a guardian appointed by the court, and no judgment can be rendered against him until after a defense by guardian. Kirby's Digest, §§ 6026-6029. The statute

refers in express words only to persons judicially found to be of unsound mind; but it is not to be doubted that the Legislature intended to give equal protection to persons of unsound mind in actions by or against them, though not judicially declared to be such. The language of the statute warrants that construction."

The competency of Mrs. Whaley to testify, and the weight to be given her testimony were matters for the Trial Court. *Keith* v. *State,* 218 Ark. 174, 235 S. W. 2d 539. On the matter of the divorce, the Trial Court did not accept her version of the facts, but as to the work she had done in assisting Mr. Whaley in acquiring the property, her testimony in many material matters was corroborated by other witnesses.

III. *Possession of the Homestead.* Mr. Whaley held title to ⅞ths interest in 240 acres of land in Independence County; and he and Mrs. Whaley made their home on this land the last several years that they lived together. Mrs. Whaley has continued to live on the land and support herself by raising cattle and poultry. The land does not appear to be extremely valuable or productive, and the house is without any modern conveniences. In the June decree, the Court, at the suggestion of Mr. Whaley, awarded Mrs. Whaley a homestead interest in the house and one acre of the ground on which it was situated. But in the April, 1954, decree—from which comes this appeal—the Court awarded Mrs. Whaley a homestead in Mr. Whaley's interest in the entire 240 acres, provided:

". . . that she shall pay all taxes which may accrue against said lands and maintain the improvements thereon so long as she retains possession of said lands, and that Defendant shall pay all the costs of this action."

We understand this decree to give Mrs. Whaley a *homestead right* on the quoted condition, rather than a *vested life estate.* In other words, her homestead right may be abandoned. Mr. Whaley complains that the Trial Court gave Mrs. Whaley too much of the land; and he cites our Statute (§ 34-1214 Ark. Stats. on the division

of property in divorce suits), and also the following cases: *Beene* v. *Beene*, 64 Ark. 518, 43 S. W. 968; *Taylor* v. *Taylor*, 153 Ark. 206, 240 S. W. 6; *Lance* v. *Mason*, 151 Ark. 114, 235 S. W. 394; *Dowell* v. *Dowell*, 207 Ark. 578, 182 S. W. 2d 344, and 209 Ark. 175, 189 S. W. 2d 797. But from the evidence, the Court might have found that Mr. and Mrs. Whaley, in acquiring the interest of Mr. Whaley's co-tenants, had done so as tenants in common between themselves;[1] or, from the evidence, the Court might have found that Mrs. Whaley's money and energies and efforts indirectly furnished the consideration for the interests that were acquired. In the event of either of such findings, the Court could have awarded Mrs. Whaley a greater interest than a mere conditional homestead right in the 7/8ths interest of Mr. Whaley. So, from a review of the entire record, we cannot say that the Court decided against the preponderance of the evidence in making the homestead award as it did in the April, 1954, decree, from which comes this appeal.

In this connection, we point out that Mr. Whaley inherited an interest in the land, and during the marriage, he acquired the interest of all of his co-tenants except one outstanding 1/8th interest. Of course, the decree herein did not, and could not, affect the interest and rights of the person holding the outstanding 1/8th interest. The burden is on Mrs. Whaley to make satisfactory arrangements with such outstanding 1/8th interest for her to continue to occupy and enjoy her homestead right in all of the 240 acres.

IV. *Division of the Personal Property.* In the April, 1954, decree—from which comes this appeal—the Court awarded Mrs. Whaley all of the household goods, all of the poultry, all of the cattle, and also $785.00 in cash. Mr. Whaley complains about the division of the cash.

At the commencement of the divorce proceedings, Mr. Whaley had some government bonds, which he later cashed for $2,570.00. The Court fixed the value of the

---

[1] For such a case, see *Price* v. *Price*, 217 Ark. 6, 228 S. W. 2d 478.

cattle at the time of the separation to be $1,000.00; and then gave Mrs. Whaley $785.00 of the cash, in order to equalize the value of the cattle with the cash. The evidence showed that Mr. and Mrs. Whaley accumulated their property through their joint efforts—in fact, he was crippled, and her energies and efforts were largely responsible for the property accumulated. The household goods and poultry were without appreciable value and Mr. Whaley conceded these to his wife. In the division of the personal property, we cannot say that the Chancery decree is against the preponderance of the evidence. See *Price* v. *Price*, 217 Ark. 6, 228 S. W. 2d 478.

Affirmed.

Mr. Justice WARD not participating.