WILSON *v.* WILSON.

Opinion delivered March 24, 1924.

1. DIVORCE—EVIDENCE AS TO HUSBAND'S PROPERTY.—In a wife's suit for divorce, evidence *held* not to support a finding that the husband had other personal property than what he took with him when he left the State to evade process in the suit which he knew she was about to bring against him.

2. DIVORCE—FRAUDULENT CONVEYANCE.—In a wife's suit for divorce, evidence *held* to show that a conveyance by the husband of a half interest in a lot, made in contemplation of such suit, was fraudulent in so far as it affected her rights.

3. DIVORCE—DISPOSITION OF HUSBAND'S PROPERTY.—Where a husband, in contemplation of his wife's suit for divorce, fraudulently con-

veyed his land, and departed from the State, taking his personal property with him, the value of such property so taken should be considered in determining her share of his property, under Crawford & Moses' Dig., § 3511, and the same declared to be a lien on the land so fraudulently conveyed.

Appeal from Garland Chancery Court; *J. P. Henderson,* Chancellor; reversed.

*Martin, Wootton & Martin,* for appellant.

A conveyance from a client to an attorney is not *per se* fraudulent, but is looked upon with suspicion and calls for strong evidence of its fairness. Bump on Fraud. Convy., § 67. The circumstances attending the transfer were unusual in many respects, and that is a badge of fraud. 27 C. J. 489-490; 27 Iowa 279. See also 27 C. J. 154; 32 Ill. 130; 133 Ark. 250. Dower should have been awarded in the personal property of appellee. Where a husband leaves the State, carrying with him his personal property, the wife may recover a judgment for one-third its value, and have a lien therefor upon the real estate of the husband. 143 Ark. 222; 151 Ark. 114. The *situs* of appellee's personal property was Hot Springs. As sustaining this contention see 2 Blackstone, 16; 25 Oh. St. 10; 41 La. Ann. 1015; 68 Ind. 247; 131 Mass. 424; 75 Tex. 476; 1 Nev. 394; 100 U. S. 491; 12 Iowa 539; 16 L. R. A. 729; 78 Ark. 187; 106 Ark. 552; 94 Ark. 235; 105 Ark. 370; 126 Ark. 611; 55 L. ed. 762 (U. S.); L. R. A., 1915C, 903. Having shown the appellee was the owner of personal property of over $30,000 in value, the law presumes the ownership remains unchanged until the contrary is shown. 22 C. J. 90, 91; 25 Ark. 459; 131 U. S., 33 L. ed. 136; 7 Ark. 450; 22 Ark. 466; 34 Ark. 498; 38 Ark. 181.

*Geo. P. Whittington,* for appellee Geilich.

Appellee had the right to take the conveyance to himself from Wilson to protect his pre-existing debt. 65 Ark. 511; 67 Ark. 122; 42 Ark. 521.

SMITH, J. Lulu Wilson and T. A. Wilson were married in this State on February 2, 1921, and on May 4, 1922, she filed suit against him in the Garland Chancery

Court for divorce and alimony. On July 12, 1922, she filed a second suit against her husband and Abraham L. Geilich, in which she alleged the pendency of her suit for divorce and alimony, and that her husband was the owner of an undivided half interest in a certain lot in the city of Hot Springs which he had fraudulently conveyed to his codefendant for the purpose of defeating her claim for alimony. Those cases were consolidated and tried together. Mr. Wilson filed no answer, but Mr. Geilich did, and, in his answer, admitted the conveyance to him, but denied that it was fraudulent, and alleged the fact to be that the deed was executed in payment of an outstanding indebtedness due him from Wilson of $5,000, with an additional cash payment of $3,500, which last sum was paid by a check for $2,000 dated 4-28-1922, and a check for $1,500, date 5-11-1922.

The lot involved had belonged to Nathan Cohn, Mrs. Wilson's father, who was suffering from cancer in an advanced stage at the time Mrs. Wilson married, and who died two weeks after the marriage. Cohn was a widower at the time of his death, and was survived by only two children, Mrs. Wilson being one, and her sister, Mrs. Oberdorfer, the other, who each inherited an undivided one-half interest. Wilson bought the undivided half interest of Mrs. Oberdorfer, and, by deed dated April 28, 1922, conveyed that interest to Geilich. Mrs. Wilson did not join in the execution of the deed, and this is the deed she attacks as having been executed for the fraudulent purpose of defeating her suit for her statutory interest in her husband's property.

Mrs. Wilson alleged and attempted to prove that Wilson owned, in addition to the half interest in this lot, money and notes of the value of $32,000, and she prayed that one-third thereof be assigned her upon a decree being rendered in her favor for divorce.

The court found that Mrs. Wilson was entitled to a divorce, and granted it. The court also found that the deed from Wilson to Geilich was a valid conveyance, but that it was made subject to Mrs. Wilson's claim of

dower, as she had not joined in the conveyance, and, having also found that the lot was not subject to partition, ordered it sold, and that the value of Mrs. Wilson's third interest for life be paid her out of the proceeds of the sale, but denied the prayer of the complaint that she be assigned an interest in the personal property, and from this decree Mrs. Wilson has appealed.

The testimony tending to show that Mrs. Wilson was entitled to a divorce is fully abstracted, and appears to be amply sufficient to entitle her to a divorce, but we do not review this testimony, as there is no appeal from that part of the decree. *Lance* v. *Mason*, 151 Ark. 114.

Mrs. Wilson testified that her home was in Hot Springs, and that she earned her living as a musician, and was employed as a pianist in an orchestra and as organist at the Jewish Temple, and that appellant met her while she was so employed, and courted her with such ardor that she became convinced of the genuineness of his affection. He insisted that they be married at once, and represented that he was a man of independent means and with an income sufficient to support her, without the necessity on her part of earning money by pursuit of her profession. According to her testimony, he gave her a list of secured notes which he owned, and she made a copy of this list at the time, which she made an exhibit to her deposition. He represented that he had other money, and owned real estate in New York, and that he also owned certain concessions at Coney Island from which he derived large sums of money during the summer.

According to Mrs. Wilson's testimony, her husband's treatment of her was such that a separation was inevitable, and she threatened to sue for divorce and alimony some days before this suit was actually filed. On May 8 she told her husband what she intended to do, and he said, "Your divorce will not do you any good, because I have put my property here in my attorney Geilich's name." Mrs. Wilson then said she would tell her attorney, and started to leave, but Wilson said,

"Come on back; I was lying; I haven't done any such thing." She took him at his word, and did not go.

When Wilson obtained his deed from Mrs. Oberdorfer he wanted it executed in blank, with the grantee not named therein, but, when Mrs. Oberdorfer refused to execute the deed in that manner, Wilson's name was inserted as grantee. Wilson testified that he desired this done, as he contemplated filling in the name of his wife, but Mrs. Wilson insists that his plan was to have a deed that would serve the undisclosed purpose, which he then entertained, of putting the property beyond the reach of any claim she might assert against it.

It is insisted that Wilson, in fact, owned the notes and securities which he claimed to own during his courtship. A strong circumstance is that this list embraced an accurate list of notes secured by mortgages on New York city property, and it appears that Wilson received remittances from New York shortly after the interest-paying periods which corresponded exactly with the amounts of principal and interest due about the time these remittances were made. This is shown by the books of the bank in which Wilson deposited the remittances for collection for his own account.

It was shown, however, that these notes were secured by mortgages made to a Mrs. Tully, who resided in New York, at least one of which was executed in 1920, before Wilson had even met Mrs. Wilson, and all the mortgages were executed before the institution of this suit, and the indebtedness secured by them corresponded with the list which Wilson had exhibited to Mrs. Wilson before their marriage, and Mrs. Tully testified that these mortgages and the indebtedness they secured belonged to her, and Wilson's only connection with them had been as her agent.

The chancellor found that Wilson did not own these notes, and we are unable to say that finding is clearly against the preponderance of the evidence.

The testimony does show, however, that Wilson left Hot Springs hurriedly and without explanation to his

wife, and it is fair to assume, and we find the fact to be, that he did so for the purpose of evading service of process in the suit which he knew his wife was about to file against him.

The testimony shows that, just before he left, he drew from the bank $1,825 which he had on deposit to his individual account, and that he drove out of Hot Springs in a new automobile, for which he had recently paid $3,000 in cash. The testimony leaves a strong impression that he had other money, but the testimony creating this impression is not sufficient to support that finding as a fact or to show the amount thereof.

The court found that the conveyance from Wilson to Geilich was made in good faith for a valuable consideration, and refused to set it aside as having been executed in fraud of his wife's demands against him.

A strong circumstance in support of this finding is that a check for $7,000 from Geilich to Wilson, offered in evidence, bore the date on which it passed through the clearing-house, and this date corresponded with the remittance of that amount made immediately after that time by the New York bank to the bank in Hot Springs for the credit of the account of Wilson, and Wilson testified that the sum thus loaned him by Geilich was used in paying for the half interest in the lot which he bought from Mrs. Oberdorfer. Both Wilson and Geilich testified that Wilson repaid $2,000 of this loan, and that this interest in the lot was conveyed to Geilich in satisfaction of this debt, the additional consideration of $3,500 being paid as hereinbefore stated.

There is no explanation of this $7,000 transaction, except that offered by Wilson and Geilich, and, if their testimony is accepted as true, the deed was not fraudulent, and it operated to convey to Geilich the title to this half interest, subject, of course, to Mrs. Wilson's inchoate right of dower, which was not relinquished.

It must be remembered, however, that no one except Wilson and Geilich could explain this transaction, and

it was to their interest to uphold it, and we do not accept their explanation.

The testimony shows that Wilson and Geilich were close friends, and that Geilich was Wilson's attorney. It does not appear that Geilich took any security for his alleged loan to Wilson, or that he collected any interest on it, or that he attempted to collect any rent on the property which he claims to have bought, until after he was made a party to this litigation. Geilich does not claim to have made any investigation as to the value of or title to the property, except the statements of Wilson in regard thereto.

Wilson paid $8,500 for the property, and claims to have sold it to Geilich for that amount, although the conveyance to him was from a married man whose wife did not relinquish her dower. Geilich testified that he did not know Wilson was married, and that Wilson came into his office with a lady, who was introduced to him by Wilson as Miss Cohn. Mrs. Wilson admitted that this incident occurred and that she was the lady thus introduced, and that Cohn was her maiden name. She testified that she did not know why her husband did this, that she demanded an explanation of him as soon as they left Geilich's office, and that he made an explanation which was far from satisfactory.

Wilson's deposition was taken on interrogatories, and he refused to answer a number of cross-interrogatories in regard to his private and past life, the answers to which might have been very elucidating.

Geilich testified that he relied upon Wilson's representations as to the title and value and his promise to hold him harmless in both respects. The deed to Geilich does bear the same date as the first check which Geilich claims he gave Wilson as purchase money, but this check, with the indebtedness claimed to be due Geilich, did not equal the consideration recited in the deed as having been fully paid, and the $1,500 check was dated some days later.

The deed to Geilich was not sent by him to the recorder for record. On the contrary, Wilson brought it with him from New York, and admits that he filed it for record himself, but says he did so pursuant to his promise to Geilich to place it of record in Hot Springs.

It is true this deed was executed before the institution of this suit, but Wilson knew before its execution that the suit would soon be brought. The testimony shows that Wilson inquired whether, under the laws of this State, a man could sell his wife's interest in land. He did not make this inquiry personally, but had a friend to advise with an attorney on that subject.

Mrs. Wilson testified that she read a letter to her husband from Geilich, in which the latter referred to an indebtedness he then owed Wilson in the sum of a thousand dollars, and this letter was written at a time when, according to the evidence of Wilson and Geilich, the former had not paid his indebtedness to the latter. Moreover, this indebtedness of a thousand dollars was included in the list of assets which Wilson represented that he owned at the time this list was submitted.

Mrs. Roach, who was Mrs. Wilson's neighbor and confidant during the time Mrs. Wilson's marital infelicity was reaching its climax, testified that Mrs. Wilson showed her a letter which Wilson had received from Geilich, containing a blank deed, and the latter stated that it was inclosed as per directions to that effect.

We think it is very clear that Wilson had determined to desert his wife some time before he finally did so, and that he intended to defeat any claim on her part to any portion of his property. The difficult question is as to what extent Geilich participated in the furtherance of that purpose.

We think the testimony shows that Geilich knew what Wilson was attempting to do. The $3,500 which he claims to have paid in cash was paid for a deed which he knew did not contain a relinquishment of the wife's dower. Geilich was not only Wilson's attorney, but he was his close friend and associate, and it is our conclusion that

the execution of the deed from Wilson was a collusive act to defeat Mrs. Wilson's suit.

As has been said, the court decreed Mrs. Wilson a third interest in the half interest for life, she being the owner of the other half interest in fee, but the court refused to make any allowance on account of the personalty.

We have concluded that the testimony does not sufficiently show that Wilson was the owner of the securities covered by the list which Mrs. Wilson made an exhibit to her deposition. But we do find that the testimony shows that Wilson took with him, when he left this State, an automobile worth $3,000 and $1,825 in money, and that he left and took this property with him to defeat the jurisdiction of the courts of this State in regard thereto. This finding brings this property within the rule announced in the case of *Austin* v. *Austin,* 143 Ark. 220.

Mrs. Wilson is entitled therefore to have the value of the property thus taken out of the State, $4,825, taken into account in determining what allowance on account of the personal property should be made her under § 3511, C. & M. Digest, which is one-third, and amounts to $1,608.35, and this sum is declared to be a lien on Wilson's interest in the lot.

It is therefore ordered that the decree of the court below be reversed in so far as it disposes of the property involved, and the court below is directed to enter a decree declaring the deed from Wilson to Geilich fraudulent in so far as it affects Mrs. Wilson's rights, and that, from the proceeds of the sale which has been ordered, there shall be paid Mrs. Wilson, in addition to the value of her third interest for life in the land, the sum of $1,608.35.