Billy J. STRANG *v.* Mary Alice STRANG

75-14                                      523 S.W. 2d 887

Opinion delivered May 19, 1975
[Rehearing denied June 23, 1975.]

*Jones, Gilbreath & Jones,* for appellant.

*Warner & Smith,* by: *Wayne Harris,* for appellee.

J. FRED JONES, Justice. Billy J. Strang and Mary Alice Strang were husband and wife until that relationship was dissolved by action of the Sebastian County Chancery Court in a divorce decree awarded to Mrs. Strang on December 31, 1970. Three children were born as a result of the marriage and their custody was awarded to Mrs. Strang with the usual right of visitation by Mr. Strang. The 1970 decree then provided as follows:

> "(6) The Estate by the entirety in all real estate owned by the parties is hereby dissolved and vest[ed] in said parties as tenants in common wheresoever located.
>
> (7) Plaintiff is entitled to all right granted to the wife under Ark. Stat. 34-1214 except such interest in real estate provided for in paragraph (6) above."

On January 11, 1972, Mrs. Strang filed a motion to modify the decree and in her motion she stated as follows:

> "[P]laintiff states that she was awarded all of the rights granted to the wife under Ark. Stat. 34-1214. In accordance with said Arkansas Statute, the wife after having been granted a Divorce against the husband was entitled by law to one-third of the defendant's personal property absolutely, and one-third of all of the lands that defendant was seized of an estate of inheritance at any time during the marriage for this plaintiff's life. That this defendant was the owner in fee to 60 acres of real estate in Section 6, Township 12, Range 27 in Sequoyah County, Oklahoma and fee owner in and to 60 acres of real estate in Section 7, Township 12, Range 27 in the County of Sequoyah, Oklahoma, on the date this plaintiff was awarded a Decree of Divorce from this defendant. That the Decree filed of record in this cause should be modified to show that this plaintiff is the record owner of an undivided one-third interest in and to the 120 acres of real estate owned by the husband and the specific property description should be set forth in

detail. Further, this defendant should be ordered and directed to convey by quitclaim deed to the plaintiff a one-third undivided interest in and to said real estate."

The original decree dated December 31, 1970, was rendered by a different chancellor than the one who finally entered the order from whence comes this appeal. After considerable correspondence between the attorneys and the chancellor, the chancellor on September 30, 1974, entered a final 11 page order, the pertinent parts of which appear as follows:

"(4) Plaintiff, will have the use, and possession of the homeplace, and with Defendant paying the existing monthly home mortgage payments, and up to $50.00 per month on the monthly utilities thereon. Plaintiff shall be responsible for the routine and ordinary upkeep and minor repairs on the homeplace. As the parties own said homeplace as tenants in common, the parties shall share equally in the cost of any major alterations or major repairs. However, no expense for major alterations, major repairs, or damages shall be incurred by the Plaintiff without having first conferred with the Defendant and obtaining his agreement if Plaintiff expects Defendant to share in the cost thereof, concerning the work required to be done; and each of the parties having opportunity to arrange for the completion of the major alterations and major repairs in a satisfactory manner at the lowest cost available. The Court expressly finds that the cost of re-painting the homeplace would be considered a major cost of upkeep and that the parties should equally share in the cost thereof. The Plaintiff shall have the right to make any and all repairs at her own expense to improve the property and without notice to this Defendant.

(5) Further, the Court finds that Plaintiff is entitled to a one-half undivided interest as a tenant in common in the following described realty in which previous ownership by tenants by the entirety has hereinbefore been dis-

solved: * * * [Lengthy description of the property]. [I]n Sequoyah County, State of Oklahoma, consisting of approximately 318 acres, together with all oil, gas, coal and all minerals in, under and upon said lands, said Warranty Deed being found in Deed Book 291, at Page 105; office of the County Clerk, Sequoyah County, Oklahoma.

Lot 34, Southbrook Addition to the City of Fort Smith, Arkansas situated in Fort Smith District of Sebastian County, Arkansas, said Warranty Deed being found in Deed Book 183, at Page 129, office of the Circuit Clerk, Fort Smith, Arkansas.

(6) Further, the Court finds that the Defendant is ordered and directed to convey to this Plaintiff a one-third interest for life in the following described realty located in the State of Oklahoma acquired by the parties during their marriage with title in Defendant's name only, and owned by Defendant on the 24th day of November, 1970:

The Southwest Quarter of the Northeast Quarter (SW¼ NE¼) and the West Half of the Southeast Quarter of the Northeast Quarter (W½, SE¼, NE¼), Section 6, Township 12 North, Range 27 East, and the Northwest Quarter of the Northeast Quarter (NW¼, NE¼) and North Half of the Southwest Quarter of the Northeast Quarter (SW¼, NE¼) of Section 7, Township 12 North, Range 27 East, situated in Sequoyah County, Oklahoma, said Warranty Deeds being found in Deed Book 293, at Page 522 and Deed Book 305, Page 451, in the office of the County Clerk, Sequoyah County, Oklahoma.

The Court finds that the Defendant be and is hereby ordered to convey said interest to Plaintiff within 15 days after the entry of this Order herein so that her interest therein might be of record. The Court further finds that upon demand by Plaintiff, Plaintiff is entitled

to receive the value of this one-third life interest in said described Oklahoma property computed in accordance with the statutory tables set out in Arkansas Statute Annotated Section 50-705. The Court retains jurisdiction over this cause for the purpose of determining the fair market value for said acreage should an Agreement not be reached by the parties herein.

(7) The Court finds that the Defendant be and is hereby directed and ordered to pay to the Plaintiff the sum of $1,156.66 which is Plaintiff's one-third interest in the accepted or agreed sale value of the personal property owned by this Defendant on November 24, 1970, amounting to $3,470.00. The Court finds that in order to do equity in this cause, Plaintiff's interest in Defendant's personal properties should be determined as of the time suit was filed in this cause. The Defendant did execute certain security agreements on the 16th day of November, 1970 which were filed of record on the 2nd day of December, 1970, but it is noted that Defendant satisfied said liens on March 2, 1971. That such action on the part of Defendant was during the pendency of this suit for divorce and designed to defeat or diminish Plaintiff's property interest. The Court, therefore, finds that Plaintiff's interest should not be reduced by the amounts of said security agreements for to do so under the circumstances of this case would be inequitable. The Defendant is directed and ordered to pay said sum of $1,156.66 to the Plaintiff within thirty days subsequent to the entry of this Order.

Further, the Court finds that the Plaintiff is entitled to a one-third interest absolutely in the following properties: Pontoon boat, mineral, calf feeder, miscellaneous tools, chest/chain saw, electric stove, and quail incubator. These items shall be appraised forthwith and sold within twenty days after the entry of the precedent for Order in this cause unless either party in the interim desires to purchase the other party's interest therein and does so.

The Court further finds that the photographic equipment, bed springs and mattress, iron bed rail, piano, dehumidifier, books, portable heaters, and household goods and furnishings are to remain with the respective parties as having heretofore been distributed to each other as personal effects or as part of the household goods or furnishings awarded to the Plaintiff for her use and that of her minor children."

The chancellor retained jurisdiction for such orders as might be necessary in the future and awarded an attorney's fee in the amount of $100 and the cost of the action against the appellant-defendant.

On appeal to this court Mr. Strang assigns error under five points stated as follows:

"The chancellor erred in awarding the appellee the use and possession of the homeplace while requiring the appellant to pay the existing home mortgage payments in the amount of $77.65 per month and up to $50.00 per month for utilities, and one-half the cost of any major alterations and repairs in addition to requiring him to pay child support and alimony in the amount of $100.00 per week.

The chancellor erred in applying Arkansas law to determine the appellee's interest in the appellant's separate real property located in Oklahoma.

The chancellor erred in failing to apply the law to the facts when he found that the appellee's interest in the appellant's personal property should be determined as of the time suit was filed rather than on the date of the decree for divorce.

The chancellor erred in requiring the appellant to pay appellee's attorney's fees and court costs.

The chancellor erred in finding that the appellee is en-

titled to a one-third interest absolutely in the following properties: Pontoon boat, mineral calf feeder, miscellaneous tools, chest, chain saw, electric stove, and quail incubator, and further erred in ordering that said items be appraised and sold inasmuch as on the date of the decree of divorce the appellant's liabilities exceeded his assets and the appellee should only be entitled to one-third of appellant's equity interest."

We are unable to say that the chancellor abused his discretion as contended by Mr. Strang under his first assignment. The chancellor's finding that Mr. Strang had an annual income of approximately $20,000 is supported by the evidence. The ages of the three minor children are 10, 9 and 8 years. The chancellor reduced the estate by the entirety in the Fort Smith homeplace to a tenancy in common and awarded Mrs. Strang the possession. Mr. Strang was directed to continue the mortgage payments of $77.65 on balance owed on the homeplace and to pay $50 per month on the utility bills. He was ordered to pay $100 per week alimony and child support to be allocated equally between Mrs. Strang and the three minor children, which would amount to $25 per week for each of them. Mr. Strang was ordered to pay one-half of any major repairs necessary in the upkeep of the homeplace.

The mortgage payments and major repairs on the property would increase and protect Mr. Strang's undivided one-half interest in the property as well as that of Mrs. Strang, and Mrs. Strang would actually receive only about $88.82 per month benefits under the decree in addition to the $100 per month in alimony. The overall money award, aside from possible major repairs on the property, would amount to approximately $6,731 per year, or approximately one-third of Mr. Strang's annual net income. While we consider the amounts of these awards quite generous under the evidence in this case, we are unable to say that the chancellor's findings and order in connection therewith are against the preponderance of the evidence, or that he abused his discretion in making them.

As to appellant's second point, Ark. Stat. Ann. § 34-1214 (Repl. 1962) provides in part as follows:

"In every final judgment for divorce . . . where the divorce is granted to the wife the court shall make an order that each party be restored to all property not disposed of at the commencement of the action, which either party obtained from or through the other during the marriage and in consideration or by reason thereof; and the wife so granted a divorce against the husband . . . shall be entitled to one-third [1/3] of the husband's personal property absolutely, and one-third [1/3] of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage for her life, unless the same shall have been relinquished by her in legal form, and every such final order or judgment shall designate the specific property both real and personal, to which such wife is entitled. . . . ."

This section then provides that when the court is satisfied that such real estate is not susceptible to division in kind without great prejudice to the parties interested, the court shall order a sale of said real estate to be made by a commissioner to be appointed by the court for that purpose, at public auction to the highest bidder upon terms and conditions fixed by the court. The proceeds of such sale then to be paid into the registry of the court and divided between the parties. This section then provides that such judgment or decree shall be a bar for claim of dower in any of the lands or personalty of the husband.

In *Beene v. Beene*, 64 Ark. 518, 43 S.W. 968, we pointed out that the purpose of this statute was to put an end to controversies as to dower right in divorce actions and, as we interpret the chancellor's order in the case at bar, he was simply attempting to determine and set aside to the wife the property she was legally entitled to *as a matter of law* and in lieu of her inchoate right of dower. The original decree simply recited that "she was entitled to all right granted to the wife under Ark. Stat. 34-1214." The appellant has correctly quoted Leflar, American Conflicts Law, § 234, (1968), but the appellant's *separate* real property involved in the case at bar, was acquired *after* marriage and § 235 of Leflar states as follows:

"If new property is acquired after marriage by purchase or exchange for property previously owned by one or both of the spouses, every state agrees that the title, or at least the equitable title, in the new property is the same as that which existed in the predecessor property. Apart from that, if the newly-acquired property be immovable, there is no doubt that in the absence of a controlling prenuptial contract the whole law of the situs determines what marital interests exist in it."

This statement from Leflar is not in conflict with § 174 having to do with the *power* of state courts to issue judgments or orders pertaining to lands in other states where, under the subtitle, "Actions Concerning Extrastate Land," appears the following statement:

"As an incident to divorce proceedings also, an in personam order may be issued against the husband requiring him to convey extrastate land to his wife in lieu of dower."

This section begins with the statement:

"Although the courts of one state are without power to issue any judgment or decree directly affecting title to land in another state. . . . "

As we interpret the chancellor's decree in the case at bar, that is exactly what the order attempted to do: directly affect title to land in another state. The right of dower has been abolished in Oklahoma[1] and the law of Oklahoma is quite different from § 34-1214, *supra*. 12 Okla. Stat. Ann. § 1278 provides as follows:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage or acquired by her in her own right after such marriage, and not previously disposed of, and

---

[1]See 84 Okla. Stat. Ann. § 214

shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. In case of a finding by the court, that such divorce should be granted on account of the fault of aggression of the wife, the court may set apart to the husband and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper."

It thus appears that under Oklahoma law a wife has no inchoate right of dower in her husband's property as is the situation in Arkansas and, therefore, the Oklahoma Legislature has not provided for disposition of such right in her husband's lands in the event of divorce. On the contrary the Oklahoma Legislature in § 1278, *supra*, has vested a very comprehensive equitable power in courts concerning the husband's real estate in connection with the award of alimony and child support. See *Gardenshire* v. *Gardenshire*, 2 Okla. 484, 37 P. 813 (1894); *Haddad* v. *Haddad*, 152 Okla. 264, 4 P. 2d 110. We conclude, therefore, that the chancellor erred in the case at bar in not applying the Oklahoma law in determining the property rights of the parties in this case.

As to the appellant's third point, we are unable to say the chancellor erred. A wife does not acquire, by marriage, an inchoate right of dower in the personal property of her husband. *Hewitt* v. *Cox*, 55 Ark. 225, 15 S.W. 1026 (1891); *Featherston* v. *Hartford Fire Ins. Co.*, 146 F. Supp. 535. Under

ordinary circumstances where property subject to division in a divorce case is mortgaged, each takes subject to the mortgage. *Crosser* v. *Crosser*, 121 Ark. 64, 180 S.W. 337. However, in the case of *Wilson* v. *Wilson*, 163 Ark. 294, 259 S.W. 742, we held that where a husband, in contemplation of his wife's suit for divorce, fraudulently conveyed his land and departed from the state taking his personal property with him, the value of the property so taken should be considered in determining her share of his property, and the same declared to be a lien on the land so fraudulently conveyed. In *Dowell* v. *Dowell*, 207 Ark. 578, 182 S.W. 2d 344, we held that where testimony supported a finding that a chattel mortgage was executed in fraud and to defeat the wife's marital rights, the wife was entitled to her interest in the personalty free from the mortgage. See also *Austin* v. *Austin*, 143 Ark. 222, 220 S.W. 46.

The parties stipulated that the value of the personal property involved in the appellant's third point had been sold and its value amounted to $3,470. The evidence was to the effect that the appellant had from time to time borrowed money from his Federal Employees Credit Union and on November 16, 1970, he executed a security agreement to the credit union covering some of the property involved. We find it unnecessary to set out the testimony pertaining to the transaction in detail. The chancellor saw the parties as they testified in the case and we are unable to say his findings as to the fraudulent intent of the appellant were against the preponderance of the evidence.

We are inclined to agree with the appellant as to his fifth point contending that the chancellor erred in finding that the appellee was entitled to a one-third interest absolutely in a pontoon boat, mineral calf feeder, miscellaneous tools, chest, chain saw, electric stove and quail incubator and in ordering said items to be sold. The appellee was awarded the household furniture and other items for the use of herself and her children and we think it only equitable that the appellant be awarded his mineral calf feeder, miscellaneous tools, chest, chain saw, electric stove and quail incubator. We find no error in the chancellor's award of a one-third interest value in the pontoon boat to appellee, and we find no error in

the chancellor's award of attorney's fee and court costs.

The decree is reversed as to the two 60 acre tracts of land individually owned by the appellant in Oklahoma. The appellee has no interest in this property. The decree is reversed as to the calf mineral feeder, miscellaneous tools, chest, chain saw, electric stove and quail incubator. These items are awarded to the appellant. One-third the value of these items is surely no more than two-thirds the value of furniture and other items awarded to the appellee.

In all other respects the decree is affirmed. The Appellee's attorney is awarded a fee of $500 for his services in this court and the appellant is hereby ordered to pay said amount.

Affirmed in part, reversed in part.

---

Dissenting Opinion on Denial of
Rehearing delivered June 23, 1975

JOHN A. FOGLEMAN, Justice, dissenting. I submit that the petition for rehearing has pointed up a grievous error in our original decision and opinion — one that we should correct before our opinion becomes a binding precedent.

While we have not decided the precise question, I feel that our holding that the courts of this state cannot take into consideration property in another state in making distribution in a divorce case and carry that distribution into effect by compelling a conveyance of that property is not only unsound and wrong, but is out of harmony with our holding in *Phillips* v. *Phillips*, 224Ark. 225, 272 S.W. 2d 433.

If the question were one involving the right a wife has, by reason of the marriage, in her husband's property, I could agree that Oklahoma law should govern. But this is not the question involved at all. We have here a husband and wife,

who are both residents of Arkansas and both before the courts of Arkansas in person. There cannot be any doubt about Arkansas being the marital domicile. The question then, is what is the wife entitled to as a distribution of the husband's property when she is granted a divorce as the injured party. I think the reasons are partly recognized in language of the statute omitted from the original opinion in this case. The pertinent part of the statute reads:

> . . . and the wife so granted a divorce against the husband, if she shall have actually personally resided in this State for a period of time next before the commencement of the action at least equal to the residence required to enable her to maintain an action for divorce, shall be entitled to one-third [1/3] of the husband's personal property absolutely, and one-third [1/3] of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage for her life, unless the same shall have been relinquished by her in legal form, and every such final order or judgment shall designate the specific property both real and personal, to which such wife is entitled; ***** The proceedings for enforcing these orders may be by petition of either party specifying the property the other has failed to restore or deliver, upon which the court may proceed to hear and determine the same in a summary manner after ten [10] days' notice to the opposite party. And such order, judgment or decree shall be a bar to all claim of dower in and to any of the lands or personality [personalty] of the husband then owned or thereafter acquired on the part of his said wife divorced by the decree of the court.

> Provided, however, that a wife not having actually personally resided in this State for a period of time, next before the commencement of the action, at least equal to the residence required to enable her to maintain an action for divorce, but found to be the injured party in an action brought on the grounds of three [3] years separation or granted an absolute divorce on her cross-complaint, shall be entitled to the same portion, if any,

of the husband's personal or real property, or both, that she would have been entitled to, if an absolute decree of divorce had been granted her in the state of the last matrimonial domicile of the parties, wherein they lived together as husband and wife, such portion, however, not to exceed that to which a wife residing in this State, as aforesaid, would be entitled under the provisions of this Section and, provided further, that no permanent alimony allowable under Section 34-1211, Arkansas Statutes 1947, shall be granted a wife not a resident of this State as aforesaid but found to be the injured party in an action brought on the ground of three [3] years separation or granted an absolute divorce on her cross-complaint, unless permanent alimony is, at the time of the rendition of the decree, allowable upon the granting of an absolute divorce in the state of the last matrimonial domicile of the parties, wherein they lived together as husband and wife.

This language itself recognizes that the law of the marital domicile should be the overriding factor in distribution of the husband's property in a divorce case. It clearly provides for those cases in which the law of some other state should be applied. This is not one of them. It does not say that the wife is entitled to one-third interest in the husband's Arkansas real estate only.

Marriage is a social institution in which the state has a vital interest. 52 Am. Jur. 2d 866, Marriage § 2. The state has a vital interest in its protection and we have said that it is a silent third party in every divorce action. *Dunn v. Dunn,* 222 Ark. 85, 257 S.W. 2d 283; *Mohr v. Mohr,* 206 Ark. 1094, 178 S.W. 2d 502. The state of the marital domicile has the greatest interest in the marital status. Leflar, American Conflicts Law 533, § 220. The state of the marital domicile has the power to prescribe the duties and obligations of the marriage partners. 55 CJS 809, Marriage, § 2. It has the exclusive right to determine the marital status of its domiciled citizens, respecting questions of marriage and divorce. *Peirce v. Peirce,* 379 Ill. 185, 39 N.E. 2d 990 (1942); *Larsen v. Erickson,* 222 Minn. 363, 24 N.W. 2d 711 (1946).

The important question is what provision shall be made for the wife out of the husband's property, when both are domiciliaries. It matters not where the property is located. One jurisdiction should control that distribution, insofar as possible. No better expression of my view could be given than that expressed in *McElreath* v. *McElreath*, 162 Tex. 190, 345 S.W. 2d 722, where the Texas court directed enforcement of an equitable decree in a divorce suit in Oklahoma ordering the husband to convey Texas lands to the wife based on a distribution under the Oklahoma statute. Oklahoma was the marital domicile. The Texas court said:

> Insofar as marital property is concerned, the laws of Oklahoma are different from those of Texas. However, upon the dissolution of a marriage, Oklahoma like Texas seeks to provide equitable distribution of properties and property rights between its residents. Quite obviously one authority must settle these rights if anything approaching fairness and equity is to be secured. Jurisdiction for such purpose rests with the courts of the matrimonial domicile which, in this case, is the State of Oklahoma. ***** This case involves Oklahomans and it is not against the public policy of Texas for Oklahoma to maintain a different system of property ownership for its residents than that provided by Texas for Texans.

Article 4638 of Vernon's Ann. Tex. Stats. is a part of Chapter 4, Title 75 of the Revised Statutes relating to Divorce. It reads as follows:

> "The court pronouncing a decree of divorce shall also decree and order a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any. Nothing herein shall be construed to compel either party to divest himself or herself of the title to real estate."

This article and the chapter of which it is a part

apply only to Texas courts pronouncing decrees of divorce in suits involving Texas residents. Our community property system naturally affects our plan of property division upon a marriage dissolution. Under our laws, permanent alimony is not recognized, nor is a Texas court authorized to divest either spouse of his or her title to separate property, *Hailey v. Hailey,* 160 Tex. 372, 331 S.W. 2d 299, but the wife, in the main, must look to the community property for her share of the material gains incident to an ill-starred marriage. We expect other states to recognize our system of marital property ownership, so should we respect their schemes of property ownership and attendant plans for the adjustment of property rights upon dissolution of a marriage. Texas public policy does not relate to and is not concerned with the settlement by Oklahoma courts of marital property problems which arise between Oklahoma citizens. Article 4638 establishes a policy governing Texas courts in cases involving divorce and property rights based upon the marital laws of this State. It does not purport to establish a public policy relating to land tenure by nonresidents.

The respondent here was a resident of Oklahoma when divorced. He possessed no rights in Texas property under the marital laws of this state. He had no homestead right in and to the property involved, Article 16, § 51, Texas Constitution, Vernon's Ann. St., Article 3833, Vernon's Ann. Tex. Stats., 22 Tex. Jur., Homestead, §§ 31, 32, or anything similar thereto.

*****

. . . The trial court and the Court of Civil Appeals treated the decree as being one which directly affected the title to Texas lands. We regard it as being an equitable order operating in personam which orders James Dorsey McElreath to execute a deed conveying land in Texas to Evelyn Ann McElreath.

*****

James Dorsey McElreath's holdings consisted of real and personal property situated in both Oklahoma and Texas. The Texas property was devised to him by his father, A. R. McElreath. This circumstance is immaterial as the Oklahoma statute above quoted makes no distinction between property acquired by gift, devise or bequest and any other form of separate property. Under the Oklahoma law the court was empowered to allow alimony to the wife "out of the husband's real and personal property."

\*\*\*\*\*

. . . [W]e might inquire as to how and in what way does one state's action in adjusting the property rights and problems of its own citizens violate the public policy of another state. Or, to be specific and to the point insofar as this case is concerned, what difference does it make to the State of Texas whether the property here involved is awarded to the ex-husband or the ex-wife of a broken Oklahoma marriage?

\*\*\*\*\*

It would seem that Texas should have no concern with the statutes and methods adopted by Oklahoma in settling the matrimonial differences of its citizens and their property rights.

\*\*\*\*\*

Although this Court and the courts below may be of the opinion that the Oklahoma trial court should have awarded Oklahoma land rather than Texas land to the wife or entered an alternative money award to the wife in the event the husband refused to convey the Texas land, 17A Am. Jur. 172, Divorce and Separation § 991, and thus avoided the complexities incident to the type of

decree now before us, such opinion or belief would not justify a conclusion that the Oklahoma judgment is contrary to Texas public policy. The public policy issue, stripped of all its spurious and specious ramifications, is simply answered by saying that insofar as the public policy of Texas is concerned, either a husband or a wife to a broken marriage of Oklahoma residents may hold land in this state.

*McElreath* has been cited and applied in other jurisdictions. One case determined on its authority is *Phelps* v. *Williams*, 192 A. 2d 805 (DC. Ct. App. 1963). There the court said:

We of course agree with the trial court that the Ohio decree could not operate directly upon or affect title to the District of Columbia real estate, and that part of the decree which sought to effect a conveyance of title to the wife free from any interest of the husband was wholly ineffective. ***** But it does not necessarily follow that appellant is entitled to no relief.

The Ohio court had personal jurisdiction over appellee and had authority to order him to pay alimony to appellant, and under the law of Ohio alimony may be allowed in real property. In this case the Ohio court ordered appellee to convey the real estate to appellant "as and for" alimony. Thus, although the Ohio court could not by its decree directly act upon the title to the District of Columbia real estate, it could and did impose a personal obligation upon appellee to convey such real estate to appellant as and for her alimony.

*****

Appellee was subject to the jurisdiction of the Ohio court and that court granted appellant a divorce and made a final determination of the rights of the parties with respect to support for the wife. Appellee has the

burden as well as the benefit of that determination. There was imposed upon appellee a personal obligation to convey the real estate and such obligation should be recognized and enforced here.

The Nebraska Supreme Court reached the same result. *Weesner* v. *Weesner*, 168 Neb. 346, 95 N.W. 2d 682 (1959). That court said:

> Also, the Wyoming court had jurisdiction of the parties, the divorce controversy, and all that pertained to it, including an award in lieu of alimony to defendant. If once decided in a final valid personam decree, the same claim or demand for division of the property and alimony cannot generally be relitigated in another action between the parties in this state because of the application of the principle that determines the estoppel of judgments which are res judicata. In other words, as claimed by plaintiff, the Wyoming court had no jurisdiction and authority to directly affect and determine the title to the property in North Platte, Nebraska. However, it did have jurisdiction and authority under the circumstances presented here, to render any personam order it might make in lieu of alimony, such as an order that plaintiff make, execute, and deliver a quitclaim deed to defendant of his interest in the property, which when made and final would be res judicata and binding upon plaintiff and defendant. See, *Bates* v. *Bodie*, 245 U.S. 520, 38 S. Ct. 182, 62 L. Ed. 444.

*****

> . . . [I]t is universally held that a court of one state cannot directly affect or determine the title to land in another state. However, it is also now well established that a court of competent jurisdiction in one state with all necessary parties properly before it in an action for divorce, generally has the power and authority to render a decree ordering the execution and delivery of a deed to

property in another state in lieu of alimony for the wife.

In New Jersey, a decree of a Florida court directing the husband to convey New Jersey land to the wife as lump sum alimony was enforced in *Higginbotham v. Higginbotham,* 92 N. J. Super 18, 222 A 2d 120 (1966), saying:

> The Florida court, as earlier noted, had jurisdiction of the parties and the subject matter of the divorce action. Defendant concedes that its judgment is in all respects valid except for the provision relating to the conveyance of the Clifton property. The Florida court had the power to grant lump sum alimony, Fla. Stat. Ann., § 65.08, and this in the form of ordering defendant to convey the property in question. *Kilian v. Kilian,* 97 So. 2d 201 (D. Ct. App. 1957); *Bezanilla v. Bezanilla,* 65 So. 2d 754 (Sup. Ct. 1953).

See also, *Larrabee v. Larrabee,* 504 P. 2d 358 (1972) where a Colorado intermediate court approved a decree requiring conveyance of Texas property, citing *McElreath.*

These decisions clearly recognize that when the parties to a divorce suit are before the court in the state of the marital domicile that state may apply its laws relating to property distribution. Support is given by the text writers. Dr. Leflar speaks clearly on the subject, and contrary to the inference drawn from the proof-text quotations in the original opinion. In his American Conflicts Law, he has said:

> A decree determining the personal rights of parties, both before the court, with reference to land located in or out of the state ought to be as conclusive as any other judgment. The states are free to reach this conclusion, since *Fall v. Eastin* [215 U.S. 1, 30 S. Ct. 3, 54 L. Ed. 65] does not say that faith and credit must not be given to land decrees, but only that it need not be given. Most states today do give full faith and credit to them. On facts almost identical with those in the Nebraska case,

Iowa gave effect to the same kind of Washington decree ten years later, distinguishing *Fall* v. *Eastin* narrowly on its facts. Nebraska itself changed its position and now grants faith and credit to sister states' in personam orders for conveyances of local land, as do most of the other states in which the question has recently arisen. In *Durfee* v. *Duke* [375 U.S. 106, 84 S. Ct. 242, 11 L. Ed. 2d 186] the United States Supreme Court came close to saying that *Fall* v. *Eastin* is superseded, by holding that a sister state jurisdictional finding concerning land was binding on the parties. But the old case has not yet been overruled. The question now is as to what a state court ought to do.

The courts of one state cannot directly affect title to land in another state, and all courts have always looked with suspicion upon the orders of extrastate courts concerning local land. But a court having personal jurisdiction over parties can adjudicate their personal rights and obligations in reference to any res, wherever situated, and all courts have agreed in giving extrastate negative effect to such adjudications, that is, in treating them as defenses to later suits between the same parties on the original causes of action. Several states have allowed such personal decrees to be employed affirmatively, by entertaining suits brought upon them as causes of action. p. 191, § 83.

*****

Although the courts of one state are without power to issue any judgment or decree directly affecting title to land in another state, it is permissible for them to issue in personam judgments and decrees in suits involving foreign land. ***** As an incident to divorce proceedings also, an in personam order may be issued against the husband requiring him to convey extrastate land to his wife in lieu of dower. pp. 428, 429, § 174

*****

. . . The only way in which a wife can secure a direct assignment of dower in land or in tangible chattels in connection with a divorce is by securing her divorce at the situs of the land or chattels. This applies, however, only to a direct assignment; indirectly, the award can often be accomplished by the court which grants the divorce taking into consideration the value of the estrastate property and proportionately increasing the amount awarded to the wife out of local property, or rendering a personal decree against the defendant husband (if he be personally subject to the jurisdiction) for the increased amount in lieu of dower. p. 574, § 239

\*\*\*\*\*

If the court granting the divorce has personal jurisdiction over the husband, it may issue an in personam decree against him ordering him to convey extrastate land to his wife in lieu of dower. Such a decree will have no effect upon the legal title to the foreign land, and the decree is not absolutely entitled to full faith and credit in the state where the land lies. But most states of situs will voluntarily recognize and give effect to such decrees as rendering res judicata a prior right of the parties and creating an equitable obligation which is entitled to extrastate enforcement. p. 575, § 239

In 3 Nelson, *Divorce and Annulment*, (2d Ed.) 519, § 33.43, the writer says:

A court of one state has no jurisdiction over immovable or real property in another. Such property is governed by the lex rei sitae and is subject to the exclusive jurisdiction of the state in which it is located. Accordingly a court of one state cannot decree a charge upon, or a transfer of, realty in another; nor can its decree have any effect per se upon the title to such property. But a court having jurisdiction of the subject matter and parties in a divorce action can decree a division and distribution of property, including realty in another state,

by operating on the person. In other words, it can grant a decree requiring a party to execute an instrument conveying or encumbering realty in such state, the decree operating in personam and not of itself conveying or encumbering the property and, such a decree having been granted, not only may the court that granted it punish disobedience of its order, but the decree will constitute a sufficient basis for an action in the state where the property is located to compel a conveyance. Thus, where a court having personal jurisdiction of the parties has rendered a decree requiring the defendant to convey land in another state, but he has prevented the court from enforcing compliance by leaving the jurisdiction and going to the state where the property is located, a court of the latter state may render a decree in personam against him requiring him to make the required conveyance.

Our statute permits the chancellor to consider all property of the husband in all states when making a property distribution and to compel a conveyance of real property in another state as a part of that distribution. This the chancellor did in this case. I submit that he was more sensitive to the problems involved than this court has been. What are we going to do when a husband who wants to avoid a property distribution in a pending divorce case invests all his assets in real estate in Oklahoma, or any other sister state?

We recognized the propriety of application of the principles of *McElreath* and other such cases as long ago as our decision in *Phillips v. Phillips*, 224 Ark. 225, 272 S.W. 2d 433, when we recognized the power of the Kansas courts having jurisdiction of the persons of the parties to dissolve estates by the entirety in Arkansas as an incident to a divorce between a husband and wife who were domiciled in Kansas, by compelling conveyances by each to the other. At the time, our own statute empowering our courts to dissolve tenancies by the entirety had not been passed.

I would also point out that there seems to be an incon-

sistency in the original opinion's holding that Oklahoma law should have been applied and the statement that appellant has no interest in the Oklahoma property. Yet, if Oklahoma law is applied the chancellor clearly had the power to award alimony in the real estate, either in gross or in installments. Although I think this is an unsound approach, it seems clear that the chancellor might well have taken a different approach to property distribution and to alimony, had he suspected that the action he took would be set aside because he did not apply Oklahoma law. We properly recognized such a possibility in *Lockley* v. *Lockley*, 257 Ark. 603, 519 S.W. 2d 52 (1975), when we voided the trial court's attempt to act directly upon the title to Michigan real estate and remanded the case in order that the chancellor might reconsider the distribution. See also, *Wilson* v. *Wilson*, 163 Ark. 294, 259 S.W. 742. We did not do so here.

However, I would grant the rehearing and affirm the chancellor's decree.

I am authorized to state that Mr. Justice Brown joins in this opinion.